**Vernon ACKLIE, Appellee,**

v.

**Dana CARRIER, J.R. "Bob" Smith Oil Co., Inc. and Federated Mutual Insurance Company, Appellants.**

Supreme Court of Tennessee, at Knoxville.

Feb. 26, 1990.

Edwin L. Treadway, T. Martin Browder, Jr., Hunter, Smith & Davis, Kingsport, for appellants.

Richard W. Pectol, Vincent A. Sikora, Richard W. Pectol & Associate, P.C., Johnson City, for appellee.

## OPINION

COOPER, Justice.

This is an appeal by J.R. Smith Oil Company, Inc., and its insurer from an award of worker's compensation benefits to Vernon Acklie. The basis of the liability of the Oil Company is the finding by the trial court that the oil company was the principal contractor for the remodeling of the Executive Plaza Building in Bristol, Virginia. Appellants insist that this finding was in error, and also insist that, at best, appellee was a casual employee. In turn, appellee takes issue with the percentage of disability found by the trial court, and the computation of appellee's average weekly wage. On consideration of these issues, we affirm the judgment of the trial court.

Smith Oil Company's primary business is the distribution of petroleum products. It also owns several improved tracts of land, which it has leased for the operation of convenience stores or service stations. The remodeling of the buildings to make them suitable for use as convenience stores was done by Smith Oil employees, with specialized work, such as electrical and heating and air conditioning, being done by independent contractors.

In May, 1986, Smith Oil Company purchased the Executive Plaza Building as an investment in rental property. According to Mr. Smith, the president of the oil company, Smith Oil Company needed to diversify and maybe have another income other than the petroleum business because its pretty rough sometimes, and it was a rental type building, so we bought it out of bankruptcy at a pretty good price.

Shortly after acquiring the Plaza, the oil company undertook a complete renovation of the second floor of the building, to meet the requirements of a law firm that had leased the space, and also undertook "more or less an upgrade" of the remainder of the building. The oil company contracted with Bob Everhart to tear out old walls and put in new walls, electricians to install wiring, Dana Carrier for heating and air conditioning work, and the Tri–City Industrial Builders. The oil company used its own employees to do "most of the painting and upgrading of the building" and to assist subcontractors by going after material and occasionally helping with heavy work.

The agreements between the oil company and the various contractors employed to work in the renovation project were oral. The only one detailed in the evidence to any extent was that with Carrier covering the installation of heating and air conditioning ducts and equipment. Under the agreement, Carrier was responsible for developing the necessary recommendations regarding details surrounding the installation of the heating and air conditioning system. He also was responsible for employing necessary workers, and for the furnishing of necessary tools for working sheet metal. Smith Oil Company was to pay the actual cost of materials and equipment necessary for completion of the system and was to pay Carrier for the hours he and his employees worked on the job. There was no agreement as to per unit or per job cost, but Carrier was required to get permission of Smith Oil Company before purchasing large items.

The record shows that Bob Smith, president of Smith Oil Company, was at the Plaza almost every day to check on progress of the renovation work, including the heating and air conditioning installations. Mr. Smith was considered the boss

and coordinated everyone's work. He gave Dana Carrier "instructions and plans as to what the job was going to entail," told Carrier where to start, what area to do next, and how he wanted the work done. On occasion, when Smith was not present, Carrier had to contact him to find out where to work at the Plaza. On other occasions, Bob Smith re-directed Carrier to work in an area different from earlier instructions. Also when carpenters failed to do necessary work, Mr. Smith directed Carrier employees to begin taking out a wall so as not to delay the renovation work.

Vernon Acklie was employed by Dana Carrier on June 9, 1986, to help install the heating and air conditioning system. On September 1, 1986, Mr. Acklie was severely injured when he fell down the shaft of an elevator on Plaza premises. At the time, Mr. Acklie was attempting to load tools to be taken to the second floor for use by him and other employees of Carrier in the installation of duct work. Carrier continued to work at the Plaza until December, 1986.

Mr. Acklie filed a worker's compensation action against his employer, Dana Carrier, and against Smith Oil Company and its insurer. The basis of the action against Smith Oil Company was that Smith was a principal contractor and, therefore, a statutory employer for purposes of the Worker's Compensation Act. *See* T.C.A. § 50–6–113. The trial court dismissed the action against Carrier, on finding that he did not have the requisite five employees and had not elected to come within the ambit of the Workers' Compensation Act. The trial court further found that Smith Oil Company was the principal contractor on the renovation of the Executive Plaza and, as such, was liable to Mr. Acklie for payment of benefits for disability resulting from injuries he received while working on the renovation of the Executive Plaza in the course and scope of his employment by Carrier.

In T.C.A. § 50–6–113, the responsibility for worker's compensation benefits is expanded beyond the traditional employer-employee relationship to principal and intermediate contractors and subcontractors. That section provides in material part, as follows:

**50–6–113. Liability of principal, intermediate contractor or subcontractor.—** (a) A principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors and engaged upon the subject matter of the contract to the same extent as the immediate employer.

\* \* \* \* \* \*

(c) Every claim for compensation under this section shall be in the first instance presented to and instituted against the immediate employer, but such proceedings shall not constitute a waiver of the employee's rights to recover compensation under this chapter from the principal or intermediate contractor; provided, that the collection of full compensation from one (1) employer shall bar recovery by the employee against any others, nor shall he collect from all a total compensation in excess of the amount for which any of the contractors is liable.

(d) This section shall apply only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under his control or management.

■ The purpose of the statute is to insure as far as possible to all workers payment of benefits when they are injured in the course and scope of their employment by passing coverage from employers who might not have coverage under the Workers' Compensation Act to intermediate or principal contractors who do have coverage. *Stratton v. United Inter-Mountain Telephone*, 695 S.W.2d 947 (Tenn.1985); *Clendening v. London Assurance Co.*, 206 Tenn. 601, 336 S.W.2d 535 (1960). Under this section, a principal contractor is made liable for injuries sustained by an employee of a subcontractor, provided at the time of injury, the employee was engaged upon the subject-matter of the general contract, and the injury occurs on, in, or about the premises under the management of the principal contractor. *See Bowling v. Whitley*, 208 Tenn. 657, 348 S.W.2d 310 (1961). And in keeping with the purpose of the statute, where a busi-

ness enterprise undertakes to act as its own principal contractor and contracts directly with subcontractors for various phases of construction on its own premises, the business enterprise is subject to the liability imposed by the Workers' Compensation Act and is entitled to the immunities conferred by that Act. *See Stratton v. United Inter–Mountain Telephone*, 695 S.W.2d 947 (Tenn.1985); *Carpenter v. Hooker Chemical & Plastics Corp.*, 553 S.W.2d 356 (Tenn.App.1977); *Posey v. Union Carbide Corp.*, 510 F.Supp. 1143 (E.D. Tenn.1941).

In this case, in renovating the office building it purchased to diversify its business activities, there is no question but that Smith Oil Company acted as its own principal contractor and project manager. Smith Oil Company selected the subcontractors, coordinated the work, made changes periodically in the plans and had work redone, and its own employees performed a substantial part of the myriad tasks attendant a major remodeling project. In short, the president of Smith Oil Company was "the boss," and was recognized by the subcontractors and their employees as such. Having undertaken to be its own principal contractor, Smith Oil Company is liable for payment of worker's compensation benefits to Vernon Acklie, since worker's compensation coverage was not provided by Acklie's direct employer.

■ Appellants also insist that Vernon Acklie was only a "casual" employee in that he was not employed in the normal operations of Smith Oil Company and, as such, was not entitled to recover benefits under the Workers' Compensation Act. We see no merit in this argument. Acklie was never directly an employee of Smith Oil Company. His direct employer was Carrier, whose principal business activity was the installation and repair of heating and air conditioning units—a task Acklie was performing when he was injured. Smith Oil Company's liability for payment of workers' compensation benefits to Acklie is due to its undertaking to act as its own principal or general contractor in upgrading an office building it purchased in an effort to diversify its business. Acklie worked for a subcontractor on the job.

The subcontractor did not have workers' compensation coverage, thus shifting liability for payment of benefits to the principal contractor, in this case Smith Oil Company. *See* T.C.A. § 50–6–113.

Appellee takes issue with the award of benefits. He insists (1) that the percentage of permanent partial disability found by the trial judge is too low, and (2) that the average weekly wage, on which the benefits are based, was incorrectly calculated.

■ Appellee sustained a fractured wrist and a fractured hip in the on-the-job accident. The hip injury was the more serious in that it eventually required a complete hip replacement. The medical testimony is that appellee has a permanent partial anatomical disability of 17 percent to the body as a whole. He walks with the aid of a cane, and has been advised to avoid excessive slopes, stairs and slippery surfaces. There is also evidence that appellee cannot work at any job which requires him to sit or stand for long periods of time, to lift, squat, climb, or move over rough terrain. A vocational assessment expert testified that with these restrictions, appellee is unable to perform about 93 percent of the jobs he was previously capable of performing. In the past, appellee had worked in heating and air conditioning repair and maintenance, on a farm, as an auto mechanic, a truck driver, a construction laborer, and general work in a convenience store. He has a high school education, and has completed several years of study in technical schools. On considering this evidence of education, background, work experience, and physical limitations, the trial judge found that appellee has a permanent partial disability of 80 percent to the body as a whole. This finding in our opinion is in accord with the evidence, and we concur in the finding.

■ In computing appellee's average weekly wage, the trial court used the wages appellee earned as an employee of Carrier. Appellee insists this was error, that the trial court should have included in its computation earnings of appellee from a part-time job at a convenience store.

The methods of determining an employee's "average weekly wage" for determina-

tion of benefits under the Workers' Compensation Act are set forth in T.C.A. § 50–6–102(1). The "average weekly wage" is defined as "the earnings of the injured employee in the employment in which he was working at the time of the injury." The statute goes on to describe several methods or formulas for computing the average weekly wage, none of which include the use of multiple employments. *Also see Gaw v. Raymer*, 553 S.W.2d 576 (Tenn.1977), where in detailing the method of computing an injured employee's average weekly wage, this court considered only the earnings of the injured employee in the employment which he was working when injured. In our opinion, this was in accord with the plain and ordinary meaning conveyed by the definition of "average weekly wage."

The judgment of the trial court is affirmed. Costs will be paid by appellants, J.R. Smith Oil Company, Inc. and Federated Mutual Insurance Company. The cause is remanded to the trial court for enforcement of its judgment and for any further proceedings which may be necessary.

DROWOTA, C.J., and FONES, HARBISON and O'BRIEN, JJ., concur.