Travis E. BROWN, Plaintiff–Appellee,

v.

CANTERBURY CORPORATION; Canterbury Gardens Limited Partnership; Cofer Construction Company Inc.; and Doyle Cofer and John Cofer, Individually and d/b/a Cofer Construction Company, Defendants–Appellants.

Supreme Court of Tennessee,
at Nashville.

Nov. 9, 1992.

Rehearing Denied, Dec. 21, 1992.

Tracy W. Moore, Columbia, for plaintiff-appellee.

Steven B. Johnson, Edward V. Babb, Knoxville, for defendants-appellants.

## OPINION

DAUGHTREY, Justice.

This workers' compensation appeal presents a question of first impression, involving the relationship among the various defendants and between the defendants and the injured worker, plaintiff Travis E. Brown. At the time of his injury, Brown was employed by defendant Cofer Construction Co. The trial court nevertheless held defendant Canterbury Corporation liable to the plaintiff under T.C.A. § 50–6–113, because its subcontractor, Cofer Construction, had failed to provide workers' compensation coverage for its employees, including Travis Brown.

Canterbury Corporation appeals the judgment of the trial court, contending, first, that it is not covered by the workers'

compensation statute because it had less than five employees at the time of Brown's injury; further, that it is "a mere owner of development property" and is therefore not liable to Brown under T.C.A. § 50–6–113; and finally, that if it is liable under § 50–6–113, the record is insufficient to support commutation of the plaintiff's award to a lump sum. (There is, however, no question raised on appeal about the circumstances of Brown's injury or the amount of the compensation award granted by the trial court.)

We agree with the contention that the record fails to justify commutation, but we find no fault with the trial court's determination that Canterbury Corporation is not exempt from coverage under T.C.A. § 50–6–106 and that it is liable to Brown under T.C.A. § 50–6–113.

## I. *Factual Background*

The record indicates that Canterbury Corporation was a Tennessee corporation, formed by two Indiana businessmen in 1986 for the purpose of developing the Canterbury Gardens residential subdivision near the site of the Saturn plant in Maury County, Tennessee, on property that had been purchased by one of the two principals in 1985. Canterbury Corporation was also the general partner of Canterbury Gardens Limited Partnership, an Indiana limited partnership involving the same investors. At the time of the plaintiff's injury on May 21, 1989, Canterbury Corporation had no more than two employees.

As the developer of Canterbury Gardens, Canterbury Corporation initially hired an Indiana company, North Hill Development Corporation, to construct town houses as Phase I of the subdivision. After building only two of the nine four-unit buildings planned for Phase I, North Hill withdrew from the project. Canterbury Corporation then hired a local construction company, headed by a man named Larry Brewer, to complete Phase I. Brewer had completed two more of the four-unit buildings by the

summer of 1989, when he, too, withdrew from the project.

In the meantime, on May 4, 1989, the president of Canterbury Gardens Limited Partnership signed a contract with Cofer Construction Company, Inc., yet another Indiana corporation. Under the terms of that contract, Cofer Construction was to complete all of the site preparation for Phase II of the project, the plan for which included the eventual construction of 90 single-family residences. Cofer Construction was responsible for putting in the streets, laying the sewer and water lines, constructing the utility connections, and landscaping the subdivision. However, the actual construction of the houses in Phase II was not Cofer Construction's responsibility.

Overseeing this development during the construction period were Canterbury's two employees, Jerry Jacquess and Kenneth Johnston, both of whom acted as on-site managers for the project at one time or another.[1] They monitored and approved the construction process, interacting both with Cofer Construction Company officials and employees and, to some extent, with various subcontractors and their employees.

Pursuant to its contract with Canterbury Corporation, Cofer Construction Company began "developing the infrastructure" of Phase II in May 1989. On May 21, 1989, one of Cofer's employees, plaintiff Travis Brown, injured his back while in the scope and course of his employment at Canterbury Gardens. That injury led to the current litigation, in which Brown sought compensation from both Cofer Construction and Canterbury Corporation. As it turned out, Cofer Construction had reneged on its contractual agreement with Canterbury Corporation to obtain workers' compensation insurance for its employees, although this omission was not discovered by Canterbury until the complaint was filed in this case. Thus, after Brown secured a default judgment against Cofer Construction Company, he looked to Canterbury Corporation

---

1. It appears that Jacquess was originally in charge, with Johnston working under him. After Jacquess left the project, Johnston became the on-site manager.

to pay that judgment. The trial court ruled that Canterbury Corporation was liable to Brown and entered judgment in Brown's favor. Canterbury Corporation appeals from that order.

## II. *Size–Restriction as a Defense*

■ The basis for Brown's claim against Canterbury Corporation is T.C.A. § 50–6–113(a), which provides in pertinent part that "[a] principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors and engaged upon the subject matter of the contract *to the same extent as the immediate employer.*" T.C.A. § 50–6–113(a) (emphasis added).

As its first defense to liability, Canterbury Corporation contends that it is not covered by the Tennessee Workers' compensation law because it has less than five employees and is thus exempt under T.C.A. §§ 50–6–102(a)(4) and 50–6–106(4). Our research has failed to turn up a Tennessee case directly on point, although the reasoning in other cases interpreting T.C.A. § 50–6–113 leads us to the conclusion that the five-employee limitation in the workers' compensation statute has no applicability in this case.

As Professor Larson has pointed out, Tennessee is one of some 43 states that impose workers' compensation liability on "statutory employers," *i.e.,* those who get part of their regular work done by the employees of a subcontractor and are held responsible for work-related injuries sustained by those employees, if the subcontractor is uninsured. Larson, *Workmen's Compensation,* § 49.14 (1991). The principal purpose of such a statutory scheme is "to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation for their workers." *Id.*

In this case, Canterbury Corporation, through its general partner, contracted with Cofer Construction to have the latter secure workers' compensation coverage on its own employees but failed to make certain that Cofer Construction had done so. (Ken Johnston testified that Canterbury officials in Tennessee thought the certificate of coverage was on file in Indiana, and those in Indiana assumed it was in Tennessee.) Under T.C.A. § 50–6–113, Canterbury is now liable to Cofer Construction's employees "to the same extent as [Cofer Construction would be]." T.C.A. § 50–6–113(a). If Canterbury Corporation qualifies, in the language of subsection (a), as "a principal, or intermediate contractor or subcontractor," it can raise only those defenses to liability that Cofer Construction can raise. Because there is no allegation, nor any proof, that Cofer Construction employs fewer than five employees, it could not plead T.C.A. § 50–6–106 as a defense, and, as a result, neither can Canterbury Corporation.

Indeed, there is one Tennessee case, decided under the predecessor statute to § 50–6–113(a), that holds the principal contractor liable even when the subcontractor employs *fewer* than five employees and would otherwise be exempt from coverage under the workers' compensation statute under normal circumstances. In *Maxwell v. Beck,* 169 Tenn. 315, 317, 87 S.W.2d 564, 565 (1935), the Court rejected the principal's argument that the phrase "to the same extent as the immediate employer" limits liability under the size-restriction provision in the compensation statute, where the immediate employer has fewer than five employees. In examining the potential consequences of accepting the principal's narrow interpretation, the Court said:

> To limit the liability thus created to cases where the immediate employer is liable under the Act, would place it within the power of the principal contractor to evade the Act by letting work to subcontractors who would stay beyond the reach of the statute by employing less than five persons and not electing to accept the Act. Such construction would

be hostile to the very purpose and intent of the Act.

*Id. Accord, Bowling v. Whitley,* 208 Tenn. 657, 348 S.W.2d 310 (1961).

We therefore hold that § 50–6–113(a) requires that a principal contractor be held liable for the uninsured work-related injuries of its subcontractor's employees, even though it is not required to provide workers' compensation coverage for its own employees. This holding is consistent with recent opinions of this Court interpreting § 50–6–113. *See, e.g., Acklie v. Carrier,* 785 S.W.2d 355, 357 (Tenn.1990), in which we noted:

> The purpose of this statute is to insure as far as possible to all workers payment of benefits when they are injured in the course and scope of their employment by passing coverage from employers who might not have coverage under the Workers' Compensation Act to intermediate or principal contractors who do have coverage.

*See also Stratton v. United Inter–Mountain Telephone Co.,* 695 S.W.2d 947, 951 (Tenn.1985).

### III. *Status under § 50–6–113(a) as a Defense*

Of course, if Canterbury Corporation is *not* a "principal, or intermediate contractor, or subcontractor" for purposes of T.C.A. § 50–6–113(a), then it would not be liable as a "statutory employer" under the Tennessee workers' compensation statute. In this vein, Canterbury Corporation argues forcefully that at the time of Brown's injury in May 1989, it was merely the owner of the land on which Canterbury Gardens was being developed, and that Cofer Construction Company was in fact the "general contractor" on the site, subcontracting various work on the project to other business entities. Ken Johnston did concede, in his testimony, that he had acted as "general contractor" with regard to the construction in Phase I, and that he once again became the "general contractor" in August 1989, with regard to Phase II. Johnston nevertheless insisted that at the time of Brown's injury in May 1989, he was merely "in charge of the on-site construc-

tion with the improvements [the residential buildings], and also for the marketing of the improvements, the management of the association on-site and homeowners' association," but was not acting as "general contractor" as to site-preparation for Phase II.

To give weight to Canterbury Corporation's argument in this regard would be to honor form over substance, and we conclude that the trial court was imminently correct in rejecting this defense. Cofer Construction Company undoubtedly did subcontract with other entities for some of the site-preparation work that it contracted to provide for Canterbury Corporation. And, as to that portion of the overall project, Cofer Construction was undoubtedly near the top of the contract pyramid. But there can be no doubt, factually or legally speaking, that Canterbury Corporation and/or its general partner, Canterbury Gardens Limited, was the "principal contractor" for the overall construction of the project.

It is true that some of the early Tennessee cases created a distinction between an owner of property and a general contractor, holding that an entity could be considered a principal contractor within the meaning of the workers' compensation act only if it performed work "for another." *See, e.g., Siskin v. Johnson,* 151 Tenn. 93, 268 S.W. 630 (1925). However, the more recent decisions indicate that an owner of property may be considered its own principal contractor under certain circumstances. *See Stratton v. United Inter–Mountain Telephone Co, supra,* 695 S.W.2d at 952.

For example, in *Acklie v. Carrier, supra,* 785 S.W.2d at 356, this Court was asked to decide whether or not an oil company that had diversified its business to include real estate development was liable for the injuries of one of its subcontractor's employees. The employee was injured when he fell down an elevator shaft while performing renovation work on an oil company building. We held that the oil company was liable as a principal contractor within the meaning of § 50–6–113(a) because it selected the subcontractors, coordinated the work, periodically changed the plans,

and had work redone. *Id.* at 358. In reaching this decision, we also relied on the fact that the oil company's employees performed a substantial part of the tasks and that the president of the company was recognized as "the boss" by the subcontractors and their employees. *Id.*

With one exception, all of the elements considered by the Court in *Acklie* are present in this case. The only missing factor is that Canterbury Corporation did not have employees performing a substantial part of the manual work. We conclude that this fact is not controlling on the outcome here. Obviously, an entity may be in the business of performing a particular task without necessarily having regular employees do it. Moreover, we do not interpret *Acklie* to require that a plaintiff must establish all of the factors mentioned in that case in order to succeed on the merits. The totality of the circumstances in the record now before us compels us to conclude that Canterbury Corporation was a principal contractor at the time of the injury in this case.

As Professor Larson has noted:

[I]f the defendant is a business which by its size and nature is accustomed to carrying on a more or less ongoing program of construction, replacement and maintenance, perhaps even having a "construction division", one which can be shown to have handled its own construction in the past, a job of construction delegated to a contractor will be brought within the statute.

Larson, *supra,* at 49.16(c).

It is for this reason that we must reject Canterbury Corporation's reliance on *Hendrix v. Ray–Ser Dyeing Co.,* 462 S.W.2d 483 (Tenn.1970), for the proposition that Cofer Construction was merely an independent contractor performing work for an owner of land. In *Hendrix,* an employee of a contractor hired to paint a smokestack was injured when he fell from the smokestack. This Court found that the owner of the stack was not liable because the injured employee was not employed in the usual course of the owner's business. *Id.* at 485. Canterbury Corporation's reliance on *Hendrix* is misplaced because unlike Ray–Ser Dyeing Co., which was not in the business of smokestack maintenance, Canterbury Corporation's sole reason for existence was to develop the Canterbury Gardens residential subdivision. Hence, *Hendrix* does not support the argument that Cofer Construction Company was an independent contractor performing services for a mere owner of land, and it therefore presents no obstacle to our conclusion that Canterbury Corporation is liable to Travis Brown for workers' compensation benefits.

### IV. *Propriety of Commutation*

■ However, we do agree with Canterbury Corporation's contention that it is entitled to relief with regard to the form of payment of those benefits. The trial court found that since the plaintiff had received only a fraction of the workers' compensation benefits due from the defendants, had incurred expenses for medical treatment, and had lost income from work as a result of his injury, he had a "special need" warranting commutation of benefits to a lump sum. But in reaching this conclusion, the trial judge did not follow the requirements codified by the legislature in a 1990 amendment to T.C.A. § 50–6–229, as interpreted by this Court in *North American Royalties v. Thrasher,* 817 S.W.2d 308 (Tenn. 1991).

The 1990 amendment eliminated the requirement of showing a special need, but imposed upon the injured worker the burden of establishing, first, that a lump sum award is in his or her "best interest" and, second, that the worker is capable of "wisely managing and controlling the commuted award." *Id.* at 311. The Court in *Thrasher* also noted that one standard relevant to the "best interest" inquiry is whether commutation to a lump sum will aid the worker's rehabilitation. *Id.*

The only proof offered at the trial regarding whether Travis Brown's best interest would be served by commutation was his own statement that a lump-sum recovery would help his wife buy a house and allow him to pay the next six-month rent payment on their trailer. The only evidence concerning his ability to wisely man-

age and control the money are three "yes, sir" answers to questions from his attorney about whether the plaintiff believed himself to be financially responsible, capable of balancing a checkbook, and able to keep track of his money. Under cross-examination, the plaintiff said that he would deposit any lump-sum award he received in a bank savings account. He also admitted he had no experience in handling large sums of money.

■ Although the proof is sparse, the plaintiff may have a meritorious request for a commutation to a lump sum. In *Thrasher*, the Court found that since the plaintiff's financial position could likely be ascertained, and since he also had a potentially valid claim for commutation, the matter should be remanded to the trial court for an evidentiary hearing to determine the lump-sum amount due the plaintiff, if any. *Thrasher*, 817 S.W.2d at 312. Under the circumstances of this case, a similar limited remand seems appropriate as well.

We therefore affirm that portion of the trial court's judgment awarding benefits to the plaintiff, to be paid by defendant Canterbury Corporation, and remand the cause for a hearing on the appropriate method of payment.

REID, C.J., and DROWOTA, O'BRIEN and ANDERSON, JJ., concur.