FILED

May 18, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 4:07 PM



## COURT OF WORKERS' COMPENSATION CLAIMS
### DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE:** Jessica Fisher

**EMPLOYER:** Middle TN Tanning d/b/a
Sun Tan City

**INSURANCE CARRIER/TPA:** The Hartford

**DOCKET #:** 2015-07-0017
**STATE FILE #:** 520-2015
**DATE OF INJURY:** December 29, 2014
**JUDGE:** Allen Phillips

### EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge telephonically on April 8, 2015, upon the Request for Expedited Hearing filed by the Employee, Jessica Fisher (Ms. Fisher) on February 25, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if the Employer, Middle TN Tanning d/b/a Sun Tan City (Sun Tan City), is obligated to provide temporary disability benefits.

Michael A. Carter represented Ms. Fisher. Gary Nichols represented Sun Tan City. Considering the applicable law, testimony of the witnesses, argument of counsel and the technical record, this Court finds that Ms. Fisher is entitled to the requested benefits.

### ANALYSIS

#### Issue

*Whether Ms. Fisher is entitled to temporary disability benefits.*

#### Evidence Submitted

The Court designated the following as the technical record:

- Petition for Benefit Determination
- Dispute Certification Notice
- Request for Expedited Hearing.

The Court did not consider attachments to the above filings not admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings and their attachments as allegations unless established by the evidence.

1

The Court admitted the following documents into evidence:

Exhibit 1: Medical Records of:
- o Sports Orthopedics and Spine (pp. 10-19)
- o OCCMed (pg. 20)
- o West Tennessee Health Care (pp. 21-25)

Exhibit 2: Choice of Physician Form (C-42)

Exhibit 3: Wage Statement (stipulated minimum compensation rate)

Exhibit 4: Employee's Work Schedule.

Ms. Fisher testified on her own behalf. Ms. Amy Beswick testified for Sun Tan City.

**History of Claim**

Ms. Fisher worked part-time for Sun Tan City as a tanning consultant. On December 29, 2014, the door of a tanning bed fell on her left wrist. On December 30, 2014, Ms. Fisher went to the emergency department of Jackson-Madison Co. General Hospital. The attending physician diagnosed a wrist sprain and advised her to seek follow-up care within the next week.

Later on December 30, 2014, she met with Ms. Jessica Penrod, a manager at Sun Tan City. The two completed paperwork regarding the injury. Ms. Fisher testified that, on December 30, Ms. Penrod told her that she, Ms. Fisher, would be placed on the work schedule but that "she [Ms. Penrod] would take care of the shifts and they would be covered." That arrangement was "agreeable" to Ms. Fisher. To her knowledge, her upcoming shifts were covered and she did not report to work as of the first week of January 2015.

On January 5, 2015, Ms. Fisher saw OccMed where the physician placed a restriction of no use of the left arm. The restriction was to remain in effect until she was seen by an "ortho." Ms. Fisher provided the note from OccMed to Ms. Penrod. Ms. Fisher testified that Ms. Penrod again advised that she, Ms. Fisher, would be "on the schedule" but that "she would take care of the shifts and [Ms. Fisher] would be removed from the schedule." Ms. Fisher remained agreeable to the arrangement.

On January 15, 2015, Ms. Fisher saw Dr. Yakin. He placed Ms. Fisher on restricted duty of "no use of her left arm." Despite her restriction, Ms. Fisher told Ms. Penrod that she believed she could work. Ms. Penrod told her she would have to check with the district manager and "get back with [her] because she did not understand how I could work cleaning the beds with one hand." Ms. Fisher testified she did not receive a response from Ms. Penrod.

Ms. Fisher later received a text message from Sun Tan City regarding an upcoming seminar. She did not attend the seminar since she was off work because of the injury. It was not

2

what she described as a "regular work day schedule" text message like the ones she received in the past regarding work schedules. About a week after injury, she did not receive any further text messages regarding her work schedule.

Ms. Fisher testified that Sun Tan City never advised her that it had a job within her restrictions or that it would make a job available to her. As of February 3, 2015, she again saw Dr. Yakin, who then allowed her to work if wearing a wrist brace. She carried the note to Ms. Penrod who asked for her available dates in the next scheduling period. Ms. Penrod stated she was compiling the upcoming work schedule and would post it the following "Monday." Ms. Penrod never notified Ms. Fisher of any available work at Sun Tan City. Ms. Fisher was "ready, willing, and able to work." On a date not totally clear by her testimony, Ms. Fisher ceased to be employed at her full-time job.

On cross-examination, Ms. Fisher stated she was aware that she was on the work schedule in January. She also was aware that the "official" way to check the work schedule was to go to the salon and read it rather than waiting for a text message. She voluntarily resigned from Sun Tan City in late February 2015 because she did feel it was "a good idea" to continue working given the "legal issues going on."

Ms. Amy Beswick testified on behalf of Sun Tan City. She is the director of operations for all of Tennessee except for "the Nashville market." She testified the company generates the work schedules at salons from an automated scheduling program. On each Thursday, based upon the volume of business at a given location, the salon manager will enter information into the program. Sun Tan City placed Ms. Fisher on each of the posted schedules in January at the Jackson location. Though some managers do send text messages regarding the upcoming schedules, the practice is not typical and is not the procedure recommended in the policy manual. Ms. Beswick was aware of Ms. Fisher's restrictions of no use of the left arm. The Jackson location could accommodate those restrictions and she advised the district manager to accommodate Ms. Fisher. After Ms. Fisher did not appear for any of her scheduled shifts in February, Ms. Beswick accepted her voluntary resignation via telephone.

Ms. Fisher's work schedules for January 2015 were admitted into evidence. On cross-examination, Ms. Beswick testified that Sun Tan City makes its work schedules two (2) weeks prior to the scheduled workweek, so Ms. Penrod would have completed the first schedule for January, 2015 in December, 2014. Ms. Beswick confirmed with Ms. Penrod that Ms. Fisher was on the January work schedule and sent an e-mail to the claims handler and attorney regarding that fact. However, Ms. Beswick was not aware that Ms. Fisher's counsel had requested information as to whether Sun Tan City had work available for Ms. Fisher within her restrictions. Ms. Beswick also did not correspond personally with Ms. Fisher regarding Sun Tan City having work available within her restrictions. She learned that Ms. Fisher was not working when she presented a seminar in Jackson and Ms. Fisher was not present. Ms. Beswick had no personal knowledge of how Ms. Fisher's shifts were covered, but testified that Ms. Fisher could have worked with the restriction of no use of the left arm. On redirect, she clarified that Ms. Fisher could be scheduled with someone who could clean beds for her while so restricted.

Ms. Jessica Penrod was present at the telephonic hearing and sworn as a witness. Sun Tan

3

City did not call Ms. Penrod to testify.

## Ms. Fisher's Contentions

Ms. Fisher argues that the issue is "who you believe." Ms. Fisher sustained a compensable injury and approved physicians placed restrictions. Ms. Penrod told her that she did not have to work. Instead, while on restrictions, Ms. Penrod would find "someone to cover for her." Ms. Fisher and Ms. Penrod spoke on two (2) separate occasions regarding Ms. Penrod having the shifts covered and Ms. Fisher did not think she needed to do anything further. Sun Tan City's failure to call Ms. Penrod as a witness means the only proof in the record is Ms. Fisher's testimony that Ms. Penrod told her that Sun Tan City would cover her shifts while she was on restrictions. Because Sun Tan City did not offer work within her restrictions, she is entitled to temporary benefits.

## Sun Tan City's Contentions

While on restrictions, Ms. Fisher asked neither to work nor to have her shifts covered. Her failure to work was voluntary. She was not only on the schedule, but was also scheduled to work with another employee who might perform any task she was restricted from performing. Therefore, the evidence shows that Sun Tan City had work available for Ms. Fisher within her restrictions and she is not entitled to temporary benefits.

Additionally, Ms. Fisher only worked part-time for Sun Tan City and counsel was "not going to presume why she took it," when referring to the job. Ms. Fisher had another job that was full-time job during the relevant period.

## Findings of Fact and Conclusions of Law

### Standard Applied

For injuries on or after July 1, 2014, the employee must show that an injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13) (2014). Tennessee Code Annotated section 50-6-239(c)(6) provides that the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence "unless the statute provides for a different standard of proof." The statute provides a different standard of proof for an Expedited Hearing where a workers' compensation judge may enter an interlocutory order for medical or temporary benefits upon a determination that the injured employee would likely prevail at a hearing on the merits given the evidence. Tenn. Code Ann. § 50-6-239(d)(1)(2014); *McCord v. Advantage Human Resourcing,* No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015); cf., *McCall v. Natl. Health Corp.,* 100 S.W.3d 209, 214 (Tenn. 2003). In making such determinations, the workers' compensation law is not to be construed either remedially or liberally, but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor the employer. Tenn. Code Ann. § 50-6-116 (2014).

4

*Factual Findings*

Ms. Fisher sustained a compensable left wrist injury on December 29, 2014. Sun Tan City accepted the claim and provided medical treatment pursuant to the Workers' Compensation Law. When placed on restrictions by authorized physicians, Ms. Fisher provided the physicians' notes to Sun Tan City. Ms. Penrod, Ms. Fisher's manager, advised Ms. Fisher on two (2) separate occasions that she, Ms. Fisher, would remain on the schedule but that Ms. Penrod would arrange for other employees to cover her scheduled shifts while she was on restrictions. Ms. Beswick had no personal knowledge of either what Ms. Penrod might have told Ms. Fisher regarding either coverage of her shifts or regarding accommodation of Ms. Fisher's restrictions. Ms. Fisher was willing to work within her restrictions had she been given the opportunity to do so.

*Application of Law to Facts*

The Court finds that Ms. Fisher is entitled to the requested benefits. In so finding, the Court notes the credible and uncontroverted testimony of Ms. Fisher. She presented as calm, at-ease and self-assured. She did not appear hesitant, deceitful, or argumentative. Though appearing by telephone, our Supreme Court has noted that telephonic testimony is more akin to live testimony than is documentary evidence. *Kelly v. Kelly*, 445 S.W.3d 685, 694 (Tenn. 2014). Here, only Ms. Fisher testified as to her actual interaction with Sun Tan City. While Sun Tan City introduced evidence that Ms. Fisher was on the work schedule but failed to report to work, Ms. Fisher's own testimony is not only more convincing, but also uncontroverted. Sun Tan City did not call Ms. Penrod as a witness though available and already sworn. Tennessee law supports a finding that the failure of a party to call a witness peculiarly within its power to produce, and whose testimony "would naturally be favorable" to it, "creates an adverse inference that the testimony would not favor his contentions." *State v. Middlebrooks*, 840 S.W.2d 317, 334 (Tenn. 1992).

Sun Tan City also argues that Ms. Fisher only worked part-time there and that she maintained a full-time job elsewhere. Such is irrelevant to the finding herein. Tennessee law is clear that, when calculating any entitlement to benefits under the law, only the wages earned in the employment producing the injury are to be included and not wages from an unrelated and concurrent job. *Acklie v. Carrier*, 785 S.W.2d 355, 359 (Tenn. 1990). Ms. Fisher's loss of wages because of her injury at Sun Tan City, albeit loss of wages from a part-time job, actuates her entitlement to benefits.

Ms. Fisher argues that she is entitled to temporary total disability (TTD). TTD is payable to an injured employee who is totally disabled to work by his injury and while she is recovering as far as the nature of the injury permits. *Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 776 (Tenn. 2000). Under Tennessee law, to establish entitlement to temporary total benefits, the employee must show she was (1) totally disabled to work by a compensable injury; (2) that there was a causal connection between the injury and her inability to work; and (3) the duration of that period of disability." *Id.* TTD benefits terminate when an employee demonstrates the ability to return to work or attains MMI. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978). Here, Ms. Fisher has not demonstrated by the evidence submitted that she was totally disabled from

5

working. Instead, she had restrictions on her activities. Thus, she is not entitled to temporary total disability benefits for the requested period.

However, Ms. Fisher has shown entitlement to temporary partial disability (TPD) benefits. TPD refers to the time during which the injured employee is able to resume some gainful employment but has not yet reached maximum recovery. *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 LEXIS 1032, *3 (Tenn. Workers' Comp. Panel, November 15, 2005). As with TTD, there must be adequate proof of a causal connection between the injury and the disability for an award of TPD. The Court finds Ms. Fisher has demonstrated the likelihood of prevailing at a hearing on the merits as to an inability to work within her restrictions for Sun Tan City. The evidence supports a finding that Sun Tan City neither made available, nor communicated to Ms. Fisher, the availability of work within her restrictions.

TPD is two-thirds (2/3) of the difference between the average weekly wage and what the employee is able to earn in her partially disabled condition. Tenn. Code Ann. § 50-6-207(2)(2014). Here, the average weekly wage, as stipulated by the parties, is such as to entitle Ms. Fisher to the minimum weekly benefit. (Ex. 3). Ms. Fisher was not, due to her restrictions, able to earn a wage during the requested period. Therefore, her TPD rate is $127.20. She is entitled to TPD from December 29, 2014, until February 3, 2015, when released to return to work without restrictions.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Fisher shall recover temporary partial disability benefits from Sun Tan City, or its workers' compensation carrier, for the requested period of December 29, 2014, through February 3, 2015, at the rate of $127.20 per week, or $653.81.

2. This matter is set for Initial Hearing on August 3, 2015, at 9:00 AM Central Time.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 18th day of May, 2015.**

**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must dial in at 731-422-5263 or 855-543-5038 toll free to participate in your scheduled conference.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation.** All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Clerk of Court shall submit the record to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the

7

appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the ~~18~~th day of May, 2015.

19th

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|----------------|
| Michael A. Carter | | | | | X | michael@crockerandcarter.com |
| Gary Nichols | | | | | X | Gary.nichols@thehartford.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WCCourt.clerk@tn.gov

8