**FILED**
**Apr 27, 2018**
**03:56 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MEMPHIS

| | | |
|---|---|---|
| **JOHN WASHINGTON,** | ) | **Docket No. 2017-08-1205** |
| **Employee,** | ) | |
| **v.** | ) | **State File No. 69226-2017** |
| **UPS GROUND FREIGHT, INC.,** | ) | |
| **Employer,** | ) | **Judge Allen Phillips** |
| **And** | ) | |
| **LIBERTY MUTUAL INS. CO.** | ) | |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

Mr. Washington requested additional medical and temporary disability benefits for his September 7, 2017 work injury. UPS asserted it had paid all benefits to which Mr. Washington is entitled. The Court heard the disputed issues on April 11, 2018, and holds Mr. Washington is entitled to continuing medical benefits under the Workers' Compensation Law.

### History of Claim

On September 7, Mr. Washington was struck in the head by a metal bar while working for UPS. UPS transported him to Concentra Medical Center where a provider recommended treatment at an emergency facility. Mr. Washington was then seen at Methodist Hospital where CT scans of his brain and cervical spine were normal. The provider diagnosed a closed head injury, mild concussion, fractured tooth, lacerated tongue, and a head contusion. The provider told Mr. Washington to follow-up with a primary care provider if he did not improve.

On September 8, Mr. Washington experienced a headache and blurred vision. He sought unauthorized treatment at Panola Medical Center (Panola) where a CT scan of the head was "negative." The provider diagnosed a concussion and headache. The discharge note again mentioned follow-up with a primary care physician.

UPS provided Mr. Washington a panel of physicians which, at Mr. Washington's

1

request, included his personal physician, Dr. Cary Mettetal. Dr. Mettetal diagnosed Mr. Washington with post-concussion syndrome and neck strain. He recommended Mr. Washington immediately stop wearing a cervical collar and referred him to a neurologist. Dr. Mettetal advised Mr. Washington to remain off work until seeing a neurologist and also restricted him from driving. He instructed Mr. Washington to return in one week.

On September 19, UPS provided Mr. Washington with a panel of neurologists from which he chose Dr. Mohammed Assaf. Mr. Washington said he chose Dr. Assaf because "someone he respects" had a favorable opinion of the doctor. However, after learning Dr. Assaf could not see him until October 26, Mr. Washington selected Dr. Nadel. Subsequently, Mr. Washington changed his mind again and opted to see Dr. Assaf as originally requested. UPS scheduled an appointment with Dr. Assaf for October 30.

On October 3, Mr. Washington went back to the emergency room at Panola where he reported a headache and dizziness. The provider diagnosed a cervical disc disorder and vertigo and noted Mr. Washington was scheduled to see a neurologist on October 30. The provider noted the "patient's presenting complaint does not qualify as a certified emergency."

On October 11, Mr. Washington returned to Dr. Mettetal who noted he still wore a cervical collar. He told Mr. Washington to immediately stop wearing the collar so his neck might move more freely. He kept Mr. Washington off work and advised him to avoid strenuous activities but to otherwise "return to all other usual duties at home." Dr. Mettetal coordinated the scheduling of a brain and cervical MRI at Panola.

On October 19, Dr. Mettetal wrote a letter stating Mr. Washington needed a "personal care assistant until his appointment with the neurologist." He deferred to the neurologist regarding any further need for an assistant. Mr. Washington also demanded UPS provide him a wheelchair and a walker. UPS consulted a home health care provider for options and sought clarification from Dr. Mettetal regarding the extent of the personal care Mr. Washington needed. Dr. Mettetal did not respond.

On October 26, both MRIs were interpreted as normal. Mr. Washington returned to the emergency room at Panola later that evening requesting pain medications. The emergency room provider noted that the "patient's presenting complaint does not qualify as a certified emergency."

Dr. Assaf saw Mr. Washington on October 30 and diagnosed post-concussion syndrome, low back pain and cervical disc degeneration. He recommended Mr. Washington remove his neck brace and that he undergo a MRI of the lumbar spine. Dr. Assaf completed a form that said Mr. Washington did not need a personal assistant or a cane. Dr. Assaf noted Mr. Washington had recorded the office visit and had "talked to many lawyers." On October 31, the doctor wrote that he "did not wish to see Mr.

2

Washington back in [his] office again" because of their disagreement about the treatment plan.

Mr. Washington believed neither Dr. Mettetal nor Dr. Assaf performed a proper evaluation. He "reported" them both to their respective state physician licensing boards, questioned the validity of their diagnoses and accused them of "falsifying" his records. He said he spoke with a representative of "HIPPA" who explained the method of requesting a provider to change medical records; he offered no documentation that he did so. Mr. Washington testified he only recorded a conversation with Dr. Assaf's office manager.

Mr. Washington underwent a lumbar MRI at Panola Medical Center on November 27 that revealed disc disease at several levels. He returned to the emergency room later that day requesting refills of medications prescribed by Dr. Mettetal. The provider stated he could not "prescribe narcotics for long term pain management" and recommended a physiatrist evaluation.

On December 6, UPS suspended payment of temporary disability benefits to Mr. Washington because "he repeatedly and intentionally refused to follow medical advice and treatment." Nevertheless, UPS provided Mr. Washington a second panel of neurologists on December 17.

Mr. Washington chose Dr. Feiyu Chen from the second panel and personally sent his medical records via e-mail to Dr. Chen's office manager. In that e-mail, he described his symptoms and further stated that he had been "illegally denied effective medical treatment" and that two "so-called treating doctors" had provided "unethical, unjust, illegal and inferior" medical treatment. He noted he had filed "complaints" against both doctors. Dr. Chen declined to see Mr. Washington.

UPS then provided a third panel of neurologists on December 22. Mr. Washington rejected this panel because it included a physician, Dr. James Wang, that he claimed would not see workers' compensation patients. On December 31, Mr. Washington again went to the emergency room seeking medication and "papers for home health services." The provider declined both requests and noted Mr. Washington's complaints did not "qualify as a certified emergency."

UPS provided a fourth panel of neurologists on January 9, 2018, from which Mr. Washington chose Dr. Bola Adamolekun, who declined to see him.

On February 1, Mr. Washington sent an email to Sarah Moore, UPS's claims handler, stating that he was making requests to amend his "intentionally falsified records" from Drs. Mettetal and Assaf and that he was "in talks with the government to have legal actions taken against" the doctors. Despite this e-mail, UPS provided a fifth panel of

3

neurologists, but Mr. Washington rejected the panel because he said one of the physicians offered, Dr. Laverne Lovell, did not treat head injuries. UPS also told Mr. Washington it would not approve payment for any future emergency room visits.[1]

After rejecting the fifth panel of neurologists, Mr. Washington declined to choose any physicians. At the hearing, he explained he wanted replacements for the refusing or unchosen neurologists for "variety." He also maintained the remaining neurologists have "bad reviews" based upon his on-line research. He contended those reviews are completely trustworthy.

Mr. Washington maintained his desire for a physician, including a psychiatrist, to evaluate all the physical and mental issues that he attributes to the September 7 incident. He contended he needs evaluation for dizziness, migraines, depression, anxiety, PTSD, and spinal pain.[2] He asked that the Court "allow [him] the opportunity to seek treating doctors outside the [workers' compensation system] completely."

Mr. Washington asked that UPS pay his personal care assistant an hourly rate for eight hours per day and forty hours per week from "day one" to current. He requested payment of outstanding emergency room bills from Panola Medical Center and reinstatement of temporary disability from December 6 and ongoing as well as a twenty-five percent penalty on the unpaid amounts. He asked that the Court adjust the compensation rate on UPS's wage statement to reflect a "one dollar per hour raise," the total amount of hours worked, and include his income from a second job.

For its part, UPS agreed the incident of September 7 occurred but maintained it had paid to Mr. Washington all benefits to which he is entitled. If Mr. Washington desires further evaluation and treatment, UPS contended he must choose one of the remaining neurologists on the multiple panels it provided. Further, it contended it did not authorize Mr. Washington's treatment at Panola Medical Center emergency room and that the medical proof does not support payments to a personal care assistant.

## Findings of Fact and Conclusions of Law

Mr. Washington must present sufficient evidence demonstrating he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2017). Though proceeding unrepresented, the Court cannot excuse Mr. Washington from complying with the same substantive and procedural rules that represented parties are expected to

---

[1] Mr. Washington went to the Panola Medical Center emergency room on February 6, but no records of that visit are in evidence.

[2] In support of his position, Mr. Washington submitted various articles regarding how his injury might cause his alleged conditions. The Court granted UPS's Motion in Limine and excluded these documents. Mr. Washington asked the Court to reverse this finding in correspondence to the Clerk and requested the undersigned Workers' Compensation Judge recuse himself "at any time he felt he could not be fair." The Court declined to reverse the holding of the motion in limine and to recuse itself.

4

observe." *Walton v. Averitt Express, Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 37, at *5 (June 2, 2017).

*Medical benefits*

*a) Further medical treatment*

Mr. Washington requests a physician to treat his alleged work-related conditions and prefers a physician outside of the workers' compensation system. The Court cannot order UPS to pay for a physician outside of workers' compensation. However, the Court holds Mr. Washington is entitled to further reasonable, necessary, and related treatment from an authorized neurologist but he must select a physician from one of the previously provided panels.

Tennessee Code Annotated section 50-6-204(a)(1)(A) provides an employer *shall* furnish medical benefits to an employee made reasonably necessary by a work injury. As part of that requirement, section 204(a)(3)(A)(i) provides an employer *shall* designate a panel of three or more independent reputable physicians to treat an injured employee and that the employee *shall* select one as the treating physician. (Emphasis added). These statutes make clear that the employer has the right to select the physicians, *Atlas Powder Co. v. Grant*, 293 S.W.2d 180, 181 (1956), and also makes clear that the employee must choose a treating physician from those provided by the employer. *Russell v. Genesco, Inc.*, 651 S.W.2d 206, 211 (Tenn. 1983).

In this case, UPS first provided Mr. Washington a panel that included Dr. Mettetal, as Mr. Washington requested. Since then, UPS has provided Mr. Washington *five* panels of neurologists. The Court finds UPS has complied fully with the statutory requirement that it provide Mr. Washington with physicians to treat his injury. However, Mr. Washington has not complied with his statutory duty to choose a neurologist.

Mr. Washington contests the competency of some of the physicians provided by UPS. However, he bases his opinions solely upon "reviews" of the physicians by unnamed and unknown parties. He produced no credible evidence of any incompetence on the part of the unselected neurologists. Moreover, the record supports a finding that Mr. Washington's actions of directly contacting neurologists and making unfounded allegations against others has hampered his receipt of additional treatment. The Court holds UPS is not required to provide any other physicians under these circumstances.

Finally, Mr. Washington has not shown entitlement to evaluation by any specialty except neurology. Because Mr. Washington is not a physician, he cannot determine what treatment is reasonable and necessary for his injury, including his subjective belief that he needs a psychiatric evaluation and home health care. *Russell v. Dana Corp.*, No. M2015-00800-SC-R3-WC, 2016 Tenn. LEXIS 520, at *21-22 (Tenn. Workers' Comp. Panel August 1, 2016). Likewise, the Court can only order treatment recommended by an

authorized physician. Currently, the only recommended treatment is a neurology evaluation. Thus, Mr. Washington must choose another neurologist from those already provided if he desires further medical treatment.

b) *Emergency room bills*

UPS risks having to pay for unauthorized treatment if it does not provide medical treatment under Tennessee Code Annotated section 50-6-204(a)(1)(A). *Hackney v. Integrity Staffing Solutions, Inc.*, 2016 TN Wrk Comp App Bd LEXIS 29 at *8 (July 22, 2016). However, Mr. Washington must also give UPS an opportunity to provide treatment before seeking it on his own. Whether he, or any employee, is justified in seeking additional treatment without consulting the employer depends on the circumstances of each case. *Id.* at *9. Here, Mr. Washington testified he was aware of the requirement that he consult with UPS before seeking unauthorized treatment, and he said he has deliberately avoided seeking another physician on his own. Rather than selecting a panel physician, he sought emergency room care at Panola on several occasions and requested UPS pay those bills.

The circumstances of this case do not indicate Mr. Washington needed "emergency" treatment on the dates in question. The emergency room notes from Panola on three separate occasions stated that Mr. Washington's presenting complaints did not constitute a true emergency. At another, the provider noted normal MRIs and said he could not prescribe narcotics to Mr. Washington long term. Notably, the latter emergency room visit occurred on the same day as the lumbar MRI, and the evidence does not establish any untoward event during the performance of that test to prompt emergency care. The Court holds the evidence does not establish any justification for the emergency room care and denies Mr. Washington's request for payment of the bills generated by it.

c) *Personal care assistant*

Tennessee Code Annotated section 50-6-204(a)(1)(A) states that medical treatment required to be provided by an employer may include "nursing services as ordered by the attending physician." Here, Dr. Mettetal said in a letter of October 19, 2017, that Mr. Washington was "in need of a personal care assistant until his appointment with the neurologist." This recommendation is not for nursing services, and the Court holds such recommendation is beyond the scope of reasonable and necessary medical benefits recoverable under the statute. The Court denies Mr. Washington's request for payments to his personal care assistant.

*Temporary disability benefits*

UPS stopped paying temporary disability benefits on December 7, 2017, because it contended Mr. Washington refused to accept medical benefits. The Court agrees.

6

Tennessee Code Annotated section 50-6-204(d)(8) provides that:

If the injured employee refuses to comply with any reasonable request for examination or *to accept the medical or specialized services that the employer is required to furnish under this chapter*, the injured employee's right to compensation shall be suspended and no compensation shall be due and payable while the injured employee continues to refuse. (Emphasis added).

Here, UPS offered Mr. Washington medical benefits by providing him three separate panels of physicians between September 8 and December 6, the period it paid him temporary disability benefits. During that period, it paid for treatment by Drs. Mettetal and Assaf, and for a lumbar MRI performed on November 27. Dr. Assaf restricted Mr. Washington from work only until performance of that MRI.

The Court finds Mr. Washington did not comply with Dr. Assaf's recommendations based solely on his subjective disagreement with the doctor's recommendations. As noted, Mr. Washington cannot provide his own opinion as to the appropriateness of medical treatment. *Russell, supra.* Further, Mr. Washington admits he declined to accept care from any other neurologist UPS offered. This refusal to accept medical services justified UPS's suspension of temporary benefits, and it may continue to do so until Mr. Washington complies by selecting a panel physician. Given this holding, the Court need not address Mr. Washington's request for a twenty-five percent penalty on unpaid benefits.

*Wage rate*

Mr. Washington contests the compensation rate UPS used for temporary disability benefits. He contends first that UPS miscalculated his earnings on the wage statement and further that it did not include his earnings from a personal business on that statement. The Court rejects both arguments.

Tennessee Code Annotated section 50-6-102(3)(A) provides that an employee's average weekly wage "means the earnings of the injured employee in the employment in which the injured employee was working at the time of the injury during the period of fifty-two (52) weeks immediately preceding the date of the injury divided by fifty-two (52)." The average weekly wage is then multiplied by sixty-six and two-thirds percent to obtain the weekly compensation rate for temporary disability benefits. Tenn. Code Ann. § 50-6-207(1)(A).

Mr. Washington contested the wages UPS reported on the wage statement because he said it did not include all of the wages he earned at UPS. However, he produced no documentation to support that argument. He also contended the total wages should include a one dollar per hour yearly raise. The statute does not allow addition of this raise unless it occurred in the fifty-two weeks prior to injury. If Mr. Washington received the

7

raise in the preceding fifty-two week period, the wage statement amount would reflect it. If he received the raise after that time, then it is not included.

Further, Mr. Washington cannot include earnings from his personal business in the calculation of his average weekly wage and corresponding compensation rate. The average weekly wage used to calculate benefits is only the wage earned in the employment in which the employee was working when injured. *Acklie v. Carrier*, 785 S.W.2d 355, 359 (Tenn. 1990).

Based on the wage statement, Mr. Washington's average weekly wage was $499.59, and sixty-six and two thirds of that amount is $333.06, the rate at which UPS paid benefits. Thus, the Court holds Mr. Washington is not entitled to additional temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court orders that UPS allow Mr. Washington to choose another neurologist from those remaining on the previously provided panels. Mr. Washington may choose one of the neurologists to be his authorized treating physician. If Mr. Washington does not do so, UPS may continue suspension of any benefits to which he is otherwise entitled under the Workers' Compensation Law.

2. The Court denies Mr. Washington's request for additional temporary benefits and the other requested medical benefits at this time.

3. This matter is set for a telephonic Status Hearing on **Tuesday, June 26, 2018,** at **11:00 a.m. Central Time**. The parties must call toll-free at 855-543-5038 to participate in the hearing. Failure to call may result in a determination of the issues without a party's further participation.

**ENTERED this the 27th day of April, 2018.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Affidavit of John Washington, including his statement of demands
2. Affidavit of Sarah Moore, including attachments
3. First Report of Work Injury
4. Wage Statement
5. Employee's Exhibits A, B, C, D, E, F, I, M, O, P, R and S (*Excluded by Motion in Limine and marked for identification only*)
6. Employee's Exhibits G and W (*Extraneous handwritten statements on these records were excluded by Motion in Limine*)
7. Collective Medical Records with Index of Concentra, Methodist Hospital, Panola Medical Center, Mettetal Family Medicine and Mohammed Assaf
8. Employee's Exhibit H, K, L, N, Q, T, U, V and X
9. Letter from UPS to Mr. Washington regarding work status
10. E-mail from Mr. Washington to Sarah Moore regarding Dr. Assaf's discontinuing treatment
11. Additional Emergency Room records

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Amended Motion to Reschedule Expedited Hearing
5. Employee's Response to Motion to Reschedule Expedited Hearing
6. Order Resetting Expedited Hearing
7. UPS's Motion in Limine
8. Employee's Response to Motion in Limine
9. Order Granting Motion in Limine
10. UPS's Expedited Hearing Memorandum
11. Employee's "Rebuttal" to Order Granting Motion in Limine
12. Order Denying Motion for Reversal of Motion in Limine and Denying Recusal

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 27th day of April, 2018.

| Name | Via Email | Service sent to: |
| --- | --- | --- |
| John Washington, Self-Represented Employee | X | Washingtonjohn73@gmail.com |
| Garrett Estep, Attorney for Employer | X | gestep@farris-law.com |

Penny Shrum, Court Clerk
Court of Workers' Compensation Claims

10