# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 12, 2025 Session

## BRIAN COBLENTZ ET AL. v. TRACTOR SUPPLY COMPANY

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Lincoln County**
**No. 2013-CV-85     M. Wyatt Burk, Judge**

_____

**No. M2023-00249-SC-R11-CV**

_____

In this appeal, we consider whether a retail store purchaser of products can be a "statutory employer" of the product vendor's injured employee under Tennessee's workers' compensation statutes, potentially secondarily liable for the employee's workers' compensation benefits, and also protected under the exclusive remedy provision. Resolving this issue requires us to answer a threshold question: whether the term "subcontractor" in Tennessee Code Annotated section 50-6-113(a) includes a product vendor who engages in only the sale and ancillary delivery of merchandise. We hold that it does not. We hold that the term "subcontractor" in section 50-6-113(a) refers to a person or entity that performs labor or services for another; section 50-6-113(a) does not apply to a pure vendor-vendee relationship. To determine whether a vendor-vendee arrangement that includes services beyond the sale and ancillary delivery of merchandise is governed by section 50-6-113(a), we adopt a version of the "predominant purpose" test often utilized in connection with the Uniform Commercial Code to ascertain whether a contract is predominantly for the sale of goods or services. In this case, there was an arrangement between a product vendor and the defendant retail store that required the vendor's sales employee to perform services other than ancillary delivery of purchased merchandise. Applying the predominant purpose test, we hold that the predominant purpose of the arrangement was for the product vendor to sell merchandise to the retail store. Any additional services rendered were incidental to the vendor's sale of merchandise to the retail store. Accordingly, the relationship between the plaintiff's employer and the defendant retail store was one of vendor-vendee, not principal-subcontractor, and is outside the ambit of section 50-6-113(a). For that reason, the defendant retail store is not the plaintiff's statutory employer for purposes of section 50-6-113(a) and is not shielded from the plaintiff's injury claims by the exclusive remedy provision of the workers' compensation statutes. Accordingly, we reverse the Court of Appeals' judgment and remand the case to the Court of Appeals for further proceedings not inconsistent with this Opinion.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Reversed; Remanded to the Court of Appeals**

HOLLY KIRBY, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J. and
SARAH K. CAMPBELL, DWIGHT E. TARWATER and MARY L. WAGNER, JJ., joined.

Richard L. Colbert, Morgan J. Hartgrove, William B. Hicky, and Sarah M. Ingalls,
Nashville, Tennessee, for the appellants, Brian Coblentz, and Cayce Coblentz.

Marshall T. Cook, and R. Colten Jones, Hendersonville, Tennessee, for the appellee,
Tractor Supply Company.

W. Bryan Smith, Memphis, Tennessee, and Brian G. Brooks, Greenbrier, Arkansas, for the
amicus curiae, Tennessee Trial Lawyers Association.

## OPINION
### FACTUAL AND PROCEDURAL HISTORY

In 2012, Plaintiff Brian Coblentz was employed as an outside sales representative
for Stanley National Hardware ("Stanley National"). Stanley National supplies hardware
to various businesses across the country. Mr. Coblentz's job required him to visit
numerous hardware stores that sold Stanley National products, including stores owned by
Defendant Tractor Supply Company ("Tractor Supply").

In the course of his duties, Mr. Coblentz visited every Tractor Supply store in his
sales region about once every four to six weeks. Mr. Coblentz described his responsibilities
as "service and inventory control." He did not bring Stanley National products to the
stores, but he checked inventory levels and placed orders for Stanley National items that
were either low or sold out. The stores had dedicated in-store display bins for Stanley
National products; Mr. Coblentz made sure the products were in the correct place in the
display bins, removed trash, and inspected and tended to the appearance of the displays.

On August 29, 2012, Mr. Coblentz visited a Tractor Supply store in Fayetteville,
Tennessee. The Stanley National display in the store included barn doors on tracks. While
Mr. Coblentz was there, one or more of the barn door tracks fell from the display and struck
him on the head. Mr. Coblentz sustained significant injuries. Stanley National paid Mr.
Coblentz workers' compensation benefits for his injuries.

About a year later, Mr. Coblentz and his wife ("Plaintiffs") filed this lawsuit against Tractor Supply in the circuit court for Lincoln County, Tennessee. The complaint alleged that Tractor Supply negligently created an "unreasonably dangerous and unsafe condition by failing to either properly install and/or maintain its display rack as well as properly stock its merchandise." The complaint also alleged Tractor Supply failed to warn Mr. Coblentz that the tracks could tip over, and that Tractor Supply's employees failed to inspect the area where Mr. Coblentz was injured.

In its answer, Tractor Supply included several affirmative defenses. Tractor Supply noted that Mr. Coblentz was acting within the course and scope of his employment at the time of his injury and his immediate employer, Stanley National, had already paid him workers' compensation benefits. Relevant here, Tractor Supply claimed that it was shielded from Mr. Coblentz's claims under the exclusive remedy provision in Tennessee's workers' compensation statutes because it was Mr. Coblentz's "statutory employer" under Tennessee Code Annotated section 50-6-113(a).

Because Tractor Supply claimed the protection of the workers' compensation exclusive remedy provision, the case was paused for several years while the parties waited for Mr. Coblentz to reach maximum medical improvement. Some discovery, including depositions, proceeded. In May 2022, based on information learned during the depositions, the Plaintiffs filed an amended complaint. The amended complaint included the same allegations as the original complaint, but based on the depositions, it added allegations that Tractor Supply's actions were wanton, willful, or reckless.

In October 2022, Tractor Supply filed a motion for summary judgment. The motion argued that Tractor Supply was entitled to judgment as a matter of law for two reasons: (1) the exclusive remedy provision in Tennessee's Workers' Compensation Law barred Plaintiffs' tort claim, and (2) irrespective of workers' compensation protection, Plaintiffs failed to establish a prima facie negligence case.

In opposition to the summary judgment motion, the Plaintiffs argued Tractor Supply did not exercise a "sufficient degree of control" over Mr. Coblentz's actions for Tractor Supply to be categorized as his statutory employer. They also argued summary judgment was inappropriate because the Plaintiffs had produced sufficient evidence to support their negligence claim. The trial court held a hearing the following month.

On January 26, 2023, the trial court granted Tractor Supply's summary judgment motion. Relying on the tests this Court articulated in *Lindsey v. Trinity Communications,*

*Inc.*, 275 S.W.3d 411, 421 (Tenn. 2009),[1] it reasoned that the type of work Mr. Coblentz engaged in at Tractor Supply stores, such as "inspecting the [Stanley National] displays, making sure displays were properly stocked . . . , and keeping them organized and clean," was part of Tractor Supply's regular business and the type of work its employees usually performed. On that basis, the trial court held Tractor Supply was "a principal contractor/statutory employer and [Mr. Coblentz] was a subcontractor/statutory employee within the meaning of Tenn. Code Ann. § 50-6-113." In the alternative, the trial court held that the Plaintiffs' claim failed because they did not produce sufficient evidence for a reasonable juror to find Tractor Supply negligent.

The Plaintiffs appealed. A majority of the Court of Appeals panel affirmed.[2] *See Coblentz v. Tractor Supply Co.*, No. M2023-00249-COA-R3-CV, 2024 WL 1828677, at *7–8 (Tenn. Ct. App. Apr. 26, 2024), *perm. app. granted*, (Tenn. Sept. 12, 2024). Like the trial court, the majority applied the *Lindsey* tests and concluded that Tractor Supply was Mr. Coblentz's statutory employer:

> At least part of the work performed by Mr. Coblentz—including inspecting the displays, making sure they were properly stocked, and keeping the area organized and clean—was the same type of work performed by Tractor Supply's employees with respect to other merchandise and displays in the store, and sometimes with respect to Stanley National's products. Based upon the undisputed facts, we cannot agree that Tractor Supply lacked the capacity to perform many of the tasks done by Mr. Coblentz.
>
> As to the third factor, whether the work is inherent or necessary in the carrying on of the business, Plaintiffs argue that drafting purchase orders for Stanley National products and putting orders into the Stanley National

---

[1] In *Lindsey*, this Court stated:

Generally, a company is considered a principal contractor if: (1) the company undertakes work for an entity other than itself; (2) the company retains the right of control over the conduct of the work and the subcontractor's employees; or (3) the work being performed by a subcontractor's employees is part of the regular business of the company or is the same type of work usually performed by the company's employees.

275 S.W.3d at 421 (internal quotation marks omitted) (first quoting *Murray v. Goodyear Tire & Rubber Co.*, 46 S.W.3d 171, 176 (Tenn. 2001); then citing *Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 951–52 (Tenn. 1985)).

[2] Judges Bennett and Clement, Jr. formed the majority; Judge Usman dissented. *Coblentz v. Tractor Supply Co.*, No. M2023-00249-COA-R3-CV, 2024 WL 1828677 (Tenn. Ct. App. Apr. 26, 2024), *perm. app. granted*, (Tenn. Sept. 12, 2024)

system is not an inherent and necessary part of Tractor Supply's business. We again reject Plaintiffs' narrow definition of the work at issue here. The tasks provided by Mr. Coblentz, including ordering products and servicing the product displays, are vital to a retail hardware business; otherwise, there are no products on the shelves to sell.

*Id.* at \*7. The majority determined that the holding that Tractor Supply was Mr. Coblentz's statutory employer pretermitted other issues, so it did not address the trial court's alternative basis for granting the summary judgment motion. *Id.* at \*7.

Judge Jeffrey Usman dissented. The dissent described the relationship between Stanley National and Tractor Supply as "vendor-vendee." *Id.* at \*8 (Usman, J., dissenting). The existing test applied by the majority, the dissent asserted, was not the appropriate framework to determine whether a vendor-vendee relationship falls within the scope of Tennessee's Workers' Compensation Law:

[B]ack stage before one arrives at the primary test for determining subcontractor status, there is, under workers' compensation law in general, a presupposition being made that the purported subcontractor is not a vendor. In this case, the parties agree, however, that is precisely what Stanley National is in relation to Tractor Supply – a product vendor.

*Id.* at \*8 (referencing 10 *Larson's Workers' Compensation Law* § 111.04[d]). The dissent also observed that "subcontracting is for the performance of work," which "pose[s] challenges to treating a vendor of goods to a retailer as a subcontractor." *Id.* at \*14. It expressed "concern[] that the statutory measures of Tennessee's Workers' Compensation Law [were] being stretched too far." *Id.* at \*16.

The Plaintiffs sought permission to appeal to this Court. The Plaintiffs argue that the lower courts failed to consider the vendor-vendee relationship between Stanley National and Tractor Supply and erred in holding that Tractor Supply was Mr. Coblentz's statutory employer under Tennessee Code Annotated section 50-6-113.[3] We granted permission to appeal.

---

[3] Plaintiffs' Rule 11 application stated the issues as:

I.      Whether the Court of Appeals erred in affirming the trial court's grant of Summary Judgment to Defendant/Appellee Tractor Supply Company and holding that Tractor Supply is Plaintiff/Appellant's statutory employer for purposes of Tennessee Workers' Compensation Law.

**STANDARD OF REVIEW**

This appeal stems from the trial court's grant of a summary judgment motion. Because resolving a "motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Blair v. W. Town Mall*, 130 S.W.2d 761, 763 (Tenn. 2004)); *Gardner v. Saint Thomas Midtown Hosp.*, 674 S.W.3d 834, 842 (Tenn. 2023) (citing *Lemon v. Williamson Cnty. Schs.*, 618 S.W.2d 1, 12 (Tenn. 2021)). A motion for summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

Here, the issue is whether the parties' dispute is governed by tort law or workers' compensation law. Its resolution requires us to interpret the pertinent statutes. Issues of statutory interpretation are questions of law, reviewed on appeal de novo with no presumption of correctness. *Falls v. Goins*, 673 S.W.3d 173, 179 (Tenn. 2023) (first citing *Steward v. State*, 33 S.W.3d 785, 791 (Tenn. 2000); then citing *Johnson v. Hopkins*, 432 S.W.3d 840, 844 (Tenn. 2013)).

**ANALYSIS**

The question in this appeal is whether the Plaintiffs' premises liability claim against Defendant Tractor Supply is precluded by the exclusive remedy provision of Tennessee's Workers' Compensation Law. *See* Tenn. Code Ann. § 50-6-113(a) (2012).[4] As explained more fully below, that question turns on whether Mr. Coblentz's employer, Stanley National, was a "subcontractor" of Tractor Supply as that term is used in Tennessee Code Annotated section 50-6-113(a), and consequently whether Tractor Supply may be deemed Mr. Coblentz's so-called "statutory employer" under the workers' compensation law. *See Murray v. Goodyear Tire & Rubber Co.*, 46 S.W.3d 171, 175 (Tenn. 2001).

---

II. Whether the Court of Appeals erred in failing to consider the vendor-vendee relationship between Plaintiff/Appellant's employer and Tractor Supply in its holding that Tractor Supply is Plaintiff/Appellant's statutory employer.

[4] Because the injury to Mr. Coblenz occurred prior to July 1, 2014, the "old" workers' compensation statutes apply. *See* Tenn. Code Ann. §§ 50-6-101 to -921 (2012); *Worrell v. Obion Cnty. Sch. Dist.*, 694 S.W.3d 158, 164–65 (Tenn. Workers Comp. Panel 2024) (discussing differences after amendment of workers' compensation statutes); *Peace v. Easy Trucking Co.*, 38 S.W.3d 526, 528 (Tenn. 2001) (discussing construction under pre-2014 statutes).

A brief overview of Tennessee's workers' compensation statutes is helpful to our analysis.

Tennessee's workers' compensation laws "were conceived as a means of providing prompt, dignified, and certain financial relief for workers who suffered employment-related injuries or diseases." Joseph H. King, Jr., *The Exclusiveness of an Employee's Workers' Compensation Remedy Against His Employer*, 55 Tenn. L. Rev. 405, 406 (1988) (footnote omitted). An employee's right to benefits depends "on the relationship of the injury to the victim's work," irrespective of whether the employer was at fault for the injury. *Id. See* Tenn. Code Ann. § 50-6-103 ("Every employer and employee subject to this chapter, shall, respectively, pay and accept compensation for personal injury or death by accident arising primarily out of and in the course and scope of employment without regard to fault as a cause of the injury or death[.]"); *Woods v. Harry B. Woods Plumbing Co., Inc.*, 967 S.W.2d 768, 772 (Tenn. 1998) (workers' compensation statutes "afford workers compensation for job-related injuries regardless of fault"). For workers' compensation claims, there is a "mutual renunciation of common law rights and defenses." *Id.* (citing Tenn. Code Ann. § 50-6-108). The workers' compensation statutes constitute "a complete substitute for previous remedies in tort on the part of an employee, and protect[] the employee in literally hundreds of ways whereby an employee and his family can get a scheduled amount for various and sundry injuries to feed and care for him while the employee is ailing from these injuries." *Liberty Mut. Ins. Co. v. Stevenson*, 368 S.W.2d 760, 762 (Tenn. 1963).

As part of the grand policy bargain, the "benefits and rights the employee gets under the [Workers' Compensation] Act are exclusive." *Id*. *See id.* ("When one accepts benefits under an Act of this kind they must likewise take the burdens."); *Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 954 (Tenn. 1985) ("The worker's compensation law is a comprehensive scheme that reflects a compromise between the interests of employers and employees."). In other words, "an employee's right to workers' compensation is usually the exclusive remedy against the employer." King, *supra*, at 407. *See* Tenn. Code Ann. § 50-6-108(a) ("The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of the employee[.]"). This is known as the "exclusive remedy" provision of the statute. *Campbell v. Dick Broad. Co. of Tenn.*, 883 S.W.2d 604, 605 (Tenn. 1994) (citing Tenn. Code Ann. § 50-6-108).

Even with the exclusive remedy provision, however, injured employees retain the right to assert a "tort cause of action for damages against 'some person other than the employer.'" *Id*. at 606 (citing Tenn. Code Ann. § 50-6-112). The reasoning is "that 'since

the third party could not have been liable for workers' compensation, he should be prepared to make the injured person whole under normal tort principles.'" *Id*. (quoting *Posey v. Union Carbide Corp*., 705 F.2d 833, 834 (6th Cir.1983)).[5]

To more fully protect employees, under Tennessee Code Annotated section 50-6-113, the responsibility for paying worker's compensation benefits to injured employees is "expanded beyond the traditional employer-employee relationship to principal and intermediate contractors and subcontractors." *Stratton*, 695 S.W.2d at 950.[6] The purpose of this provision is to "ensure that all workers will receive compensation when they are injured in the course of their employment." *Lindsey*, 275 S.W.3d at 420 (citations omitted). It is intended to prevent employers from avoiding potential workers' compensation liability by contracting out work. *Id.* It also seeks to "protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation for their workers." *Murray*, 46 S.W.3d at 175 (quoting *Brown v. Canterbury Corp*., 844 S.W.2d 134, 136 (Tenn. 1992)).

Though the term is not in the workers' compensation statutes, our caselaw refers to individuals or entities who may become liable for workers' compensation by operation of § 50-6-113 as "statutory employers."[7] *See, e.g*., *Murray*, 46 S.W.3d at 175; *Lindsey*, 275

---

[5] This allows injured employees to recover damages that are not available under the workers' compensation statutes. For example, "[d]amages for pain and suffering are not only recoverable in a tort action, but often will constitute a major portion of the total recovery. Punitive damages are recoverable in tort when the defendant's conduct was sufficiently egregious." King, *supra*, at 409. There may be procedural differences too. For example, "workers' compensation claimants are usually not entitled to a jury trial as are the parties in most tort cases." *Id*. at 410–11 (footnote omitted).

[6] Tennessee Code Annotated § 50-6-113(a) provides:

A principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

Tenn. Code Ann. § 50-6-113(a). It applies only if "the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or that are otherwise under the principal contractor's control or management." § 50-6-113(d).

[7] Occasionally our courts have also used the term "statutory employer" to differentiate between an employer-employee relationship and a relationship with an independent contractor. *See, e.g*., *Stratton*, 695 S.W.2d at 953.

S.W.3d at 420; *Adams v. Hercules Powder Co.*, 175 S.W.2d 319, 322 (Tenn. 1943). Statutory employers are "secondarily liable for workers' compensation" and pay workers' compensation benefits only if the immediate employer does not do so. King, *supra*, at 429 (citing Tenn. Code Ann. § 50-6-113(b)).

To offset their potential responsibility to pay workers' compensation benefits to workers who are deemed their statutory employees under section 50-6-113, statutory employers are also protected by the exclusive remedy rule. *Stratton*, 695 S.W.2d at 953–54; *Adams*, 175 S.W.2d at 321–22; *Manning v. Rentenbach Eng'g Co.*, 625 S.W.2d 718, 719 (Tenn. Ct. App. 1981). They are protected from tort claims by injured employees of their subcontractors even where, as here, the immediate employer has paid the injured employee's workers' compensation claim. *Stratton*, 695 S.W.2d at 953; *Adams*, 175 S.W.2d at 322; King, *supra*, at 429.

But not every party who enters into some sort of contract is deemed a statutory employer. *See, e.g.*, *Lindsey*, 275 S.W.3d at 422–23. This Court has held that, in general, a company may be considered a principal contractor under section 50-6-113, and thus a statutory employer, if one of three tests is satisfied:

> (1) the company undertakes work for an entity other than itself; (2) the company retains the right of control over the conduct of the work and the subcontractor's employees; or (3) the work being performed by a subcontractor's employees is part of the regular business of the company or is the same type of work usually performed by the company's employees.

*Id*. at 421 (internal quotation marks omitted) (first quoting *Murray*, 46 S.W.3d at 176; then citing *Stratton*, 695 S.W.2d at 951–52).

The Plaintiffs here do not challenge the test outlined in *Lindsey*. *Id*. They acknowledge it is applicable to contracts "predominately for services" but assert that it is not applicable to vendor-vendee relationships because they are outside the scope of the statutory employer rule.

This argument broadly aligns with Judge Usman's dissent in the intermediate appellate court below. The dissent first expresses the view that "existing Tennessee caselaw does not appear to have grappled with vendor-vendee relationships when determining statutory employer status." *Coblentz*, 2024 WL 1828677, at *8 (Usman, J. dissenting). It then questions whether "a vendor-to-retailer relationship falls within the parameters of the principal-subcontractor relationship" under Tennessee's workers' compensation laws. *Id*. at *15. The dissent notes that a learned treatise states that workers'

compensation law generally presupposes that a "buyer-to-vendor" relationship is not considered a principal-subcontractor relationship. *Id*. at *8 (citing 10 *Larson's Workers' Compensation Law* § 111.04[d]). It cites numerous cases from other states holding that relationships based on the sale and delivery of goods do not create statutory employer status. *Id*. at *10–11.[8] Finally, the dissent points out that pertinent dictionary definitions of the term "subcontractor" are "connected with performing work," not selling products. *Id*. at *13 (citations omitted).

In response, Tractor Supply argues we should not find vendor-vendee relationships outside the scope of section 50-6-113(a). It first cites principles of *stare decisis*, cautioning against "interfering with the interpretation, application, and scope of the Act absent action by the General Assembly."

In support of this contention, Tractor Supply cites *Cooper v. Logistics Insight Corporation*, 395 S.W.3d 632 (Tenn. 2013). In *Cooper*, the appellees asked the Court to reverse two prior decisions interpreting a workers' compensation statute not at issue in this appeal, Tennessee Code Annotated section 50-6-112. *Id*. at 639–40. The Court declined. It first cited principles of *stare decisis*. *Id*. at 639 (citing *In re Estate of McFarland*, 167 S.W.3d 299, 306 (Tenn. 2005)). It then noted that the General Assembly had not revised the statutory provision in response to the Court's prior interpretation:

> The General Assembly has broad discretion to define the scope of claims and the procedure for recovering workers' compensation benefits. It is fully within the power of the General Assembly to amend Tennessee Code Annotated section 50–6–112 to allow an employer's recovery of the cost of future medical benefits incurred by an employee and to delineate the manner in which such recovery should occur. We have ruled on the construction and operation of the statute, and it is the prerogative of the General Assembly to change it.

*Cooper*, 395 S.W.3d at 639–40 (citations and footnote omitted). Tractor Supply interprets this passage as establishing that it "is the role of the General Assembly and not this Court" to question the scope of the workers' compensation statutes.

---

[8] For example, the dissent cites *Bendure v. Great Lakes Pipe Line Co.*, 433 P.2d 558, 563–64 (Kansas 1967); *Brothers v. Dierks Lumber & Coal Co.*, 232 S.W.2d 646, 650 (Ark. 1950); *Broussard v. Heebe's Bakery, Inc.*, 268 So. 2d 656, 660 (La. 1972); *Hooks v. Wayne Cnty. Road Comm'rs*, 76 N.W. 2d 9, 12 (Mich. 1956); *Heider v. Stoughton*, 35 N.W.2d 814, 815 (Neb. 1949); *Hammock v. United States*, 78 P.3d 93, 97–98 (Okla. 2003); and *Kelly v. TRC Fabrication, LLC*, 487 P.3d 723, 728–29 (Idaho 2021).

We address the second point first. Tractor Supply points to no statutory provision that expressly addresses whether vendor-to-retailer relationships are considered principal-subcontractor relationships under workers' compensation laws. The passage in *Cooper* that Tractor Supply cites appears instead to describe the doctrine of legislative inaction, "a judicial principle that permits—but does not compel—a presumption of legislative acquiescence in a prior judicial interpretation of the statute." *Hardy v. Tournament Players Club at Southwind, Inc*., 513 S.W.3d 427, 444 (Tenn. 2017). *See also In re Markus E*., 671 S.W.3d 437, 463 n.33 (Tenn. 2023) (discussing "legislative-inaction or legislative-acquiescence doctrine").

Neither the doctrine of legislative inaction nor *stare decisis* comes into play however unless there is a prior Court decision that is on point with the issue in this case. Tractor Supply argues that this Court's decision in *McVeigh v. Brewer* is just that.[9] 189 S.W.2d 812 (Tenn. 1945).

In *McVeigh*, the defendant truck driver collided with the plaintiff, also a truck driver, at a construction site. 189 S.W.2d at 812. The plaintiff then sued the defendant driver and that driver's employer for negligence. *Id.* at 813. The defendants argued that the exclusive remedy provision in Tennessee's workers' compensation statute barred the lawsuit. In response, the plaintiff argued that "a furnisher of materials to the project is not a contractor within the meaning of" what is now Tennessee Code Annotated section 50-6-113(a). *Id*. at 814. The Court of Appeals agreed with the plaintiff. In the absence of a definition of "subcontractor" in the workers' compensation statutes, the intermediate appellate court relied on the interpretation of "subcontractor" in the mechanics and furnishers lien laws, which excluded "furnishers" from the definition of subcontractors. *Id.*

On appeal, this Court disagreed. In the facts in *McVeigh*, the federal government contracted with Hercules Powder Company to construct a new ordnance facility. *Id*. at 813. Hercules Powder Company, the principal contractor, contracted with defendant Stone & Webster Engineering Corporation ("Stone & Webster") for most of the construction. *Id*. Stone & Webster employed the defendant truck driver, and it subcontracted with Smith Stone Corporation ("Smith Stone") to "furnish and deliver crushed limestone to the job site." *Id.* Smith Stone, as the vendor of the crushed limestone, subcontracted with the

---

[9] Tractor Supply also cites *Harness v. Bechtel Jacobs Co*., No. E2006-00194-COA-R3-CV, 2007 WL 10447 (Tenn. Ct. App. Jan. 3, 2007). As a decision by our intermediate appellate court, *Harness* is not binding on this Court and principles of *stare decisis* do not apply. Moreover, *Harness* is not on point, as it did not involve an actual product vendor engaged in the sale of goods. The plaintiff's employer had been subcontracted by one contractor, who had been subcontracted by another contractor to haul away debris from a demolition project. *Harness*, 2007 WL 10447, at *1. Thus, it involved a more traditional principal contractor that subcontracted another party for a service.

plaintiff's employer, the Keith Williams Company, to deliver the stone. *Id.* at 813–14. The collision occurred while the plaintiff truck driver was on the job site to deliver the stone. *Id.* at 814.

This Court disagreed with the Court of Appeals' reliance on the mechanics and furnishers lien law to ascertain the meaning of "subcontractor" in the workers' compensation laws. It said, "[I]n the Workmen's Compensation Law the Legislature did not make any distinction between the various contractors, clearly recognizing that a furnisher is a subcontractor[.]" *Id.* The Court added:

> We cannot agree with th[e] [Court of Appeals'] distinction as the Legislature made no such distinction in its interpretation of the compensation law, but used the language 'a principal, or intermediate contractor, or subcontractor'—all inclusive—without any qualification or without interpretation or definition of the words used. The words used are well recognized words in common use, and with a generally accepted meaning. 'Contractor' is one who, for a consideration, undertakes to carry out any part of a project, whether it be to construct a chemical plant or to construct a road incident to the chemical plant, or other employment. We therefore think that a furnisher of stone for the roadway incident to said plant is a subcontractor.

*Id.* at 814–15. The Court then held that Tennessee's workers' compensation statutes applied. *Id.* at 817.

The facts in *McVeigh* differ significantly from the facts in the instant appeal. In *McVeigh*, the plaintiff's employer, Keith Williams Company, was not a product vendor. Consequently, the delivery was not ancillary to Keith Williams's sale of merchandise. Rather, the *only* thing Keith Williams contracted to do, through product vendor Smith Stone, was to provide a service, namely, delivery of crushed stone:

> Keith Williams Company was an employee of Smith Stone Corporation for the *purpose of hauling the stone, after it was crushed*, and thereby involved 'the performance, wholly or in part, at the site of the work, of some part of the work described.'

> We therefore think that within the meaning of the Workmen's Compensation Statute (Code, Section 6866) 'principal, or intermediate contractor, or subcontractor' includes Keith Williams Company and Jack S. Brewer, as such subcontractors.

*Id.* at 815 (emphasis added). *See id.* at 816 ("This makes the words 'principal' or 'intermediate contractor' or 'subcontractor' all inclusive, covering those which involve the performance, wholly or in part, at the site of the work, or any part of the project to be completed.").

In *McVeigh*, then, the plaintiff's employer and the defendant did not have a vendor-vendee relationship. In the overall construction project, defendant Stone & Webster's responsibilities included acquiring crushed stone and having it delivered to the job site. The plaintiff's employer Keith Williams subcontracted to provide pure services, the delivery part of Stone & Webster's task. Given the facts, the Court in *McVeigh* uses the word "furnish" in connection with Keith Williams to refer only to the physical labor of *delivering* the stone. Its holding is consistent with our past cases on statutory employers, which all involved contractors who subcontracted out labor and services to another worker.[10] *McVeigh* does not address the question presented in this appeal.

Consequently, we respectfully disagree with Tractor Supply's argument. There is no prior Court decision that is on-point with the issue in this case, consequently, neither *stare decisis* nor the doctrine of legislative inaction is implicated in this appeal.

Tractor Supply next argues that "this Court should decline Appellants' request to narrow the scope of the Act by changing the statutory employer rule." Again, we respectfully disagree. If the statutes do not address the question directly, and this Court has not previously opined on how the vendor-vendee relationship fits into section 50-6-113(a), we are not being asked to either "narrow" or change the statutory employer rule.

Relatedly, Tractor Supply contends that this Court should decline to consider whether vendor-vendee relationships are outside the scope of section 50-6-113(a) because "such a significant policy change should be left to the General Assembly." But here we are not asked to make policy; we are asked only to interpret and apply the statutes enacted by the General Assembly to a new set of facts. That is the everyday work of the courts, not an intrusion upon our General Assembly.

In short, we agree with the dissent in the Court of Appeals below that this Court has not "grappled with vendor-vendee relationships when determining statutory employer

---

[10] *See e.g.*, *Lindsey*, 275 S.W.3d at 415 (worker injured while splicing cable); *Troup v. Fischer Steel Corp.*, 236 S.W.3d 143, 145 (Tenn. 2007) (roofer injured while moving pallet); *Murray*, 46 S.W.3d at 174 (painter injured when air duct collapsed); *Campbell*, 883 S.W.2d at 605 (worker injured while removing antenna); *Stratton*, 695 S.W.2d at 948 (worker injured while repairing utility pole); *Clendening v. London Assur. Co.*, 336 S.W.2d 535, 536 (Tenn. 1960) (brick layer injured while on scaffold); *Williams v. Buchanan*, 261 S.W. 660, 660 (Tenn. 1924) (worker injured while quarrying rock).

status."  *Coblentz*, 2024 WL 1828677, at *8 (Usman, J., dissenting).  We approach the vendor-vendee relationship in the context of Tennessee Code Annotated section 50-6-113(a) with a clean slate.  *See Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) ("But since we have never squarely addressed the issue . . . we are free to address the issue on the merits." (citation omitted)).

### *Meaning of Subcontractor*

To frame the issue, as a threshold question, we must determine whether a vendee such as Tractor Supply can be considered a statutory employer of an employee of a product vendor such as Stanley National.  This requires us to interpret Tennessee Code Annotated section 50-6-113(a), which provides:

> A principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

Tenn. Code Ann. § 50-6-113(a).[11]  This provision was enacted in 1919 and has retained substantially identical language since then.[12]

---

[11] We have noted that we consider the "old" pre-2014 workers' compensation statutes in this case because Mr. Coblentz's injury occurred prior to 2014.  The text of section 50-6-113(a) was not revised in the 2014 amendments.

[12] The 1919 Act stated:

> That a principal, intermediate or subcontractor shall be liable for compensation to any employe [sic] injured while in the employ of any of his subcontractors and engaged upon the subject matter of the contract to the same extent as the immediate employer.

Act of Apr. 15, 1919, ch. 123, § 15, 1919 Tenn. Pub. Acts 369, 375.  Apart from removing "That" at the beginning of the 1919 version of the provision, the current version clarifies *whose* subcontractors are at issue.  The 1919 version of the provision says: "while in the employ of any of *his* subcontractors."  1919 Tenn. Pub. Acts 369, 375.  The current version provides: "while in the employ of any of *the* subcontractors *of the principal contractor, intermediate contractor or subcontractor*."  Tenn. Code Ann. § 50-6-113(a). This clarification does not affect our analysis of whether "subcontractor" includes product vendors such as Stanley National.  *Cf.* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 257 (2012) (stating the "presumption that a change in language produces a change in meaning" should not apply when the legislature merely revises statutory language to provide for non-substantive "consistency of expression").

- 14 -

Under 50-6-113(a), Tractor Supply could become secondarily liable to pay Mr. Coblentz's workers' compensation benefits only if Mr. Coblentz's employer, Stanley National, is a "subcontractor" of Tractor Supply within the meaning of this provision. *See* Tenn. Code Ann. § 50-6-113(a); *see also Murray*, 46 S.W.3d at 175 ("However, our legislature has extended this relationship and has made principal contractors liable under certain circumstances for injuries sustained by the employees of subcontractors[.]"). Only then could Tractor Supply be classified as Mr. Coblentz's statutory employer and be protected from the Plaintiffs' tort claims under the exclusive remedy rule. Thus, the question of Tractor Supply's status as a potential statutory employer hinges on whether Stanley National is a "subcontractor" under section 50-6-113(a).

The workers' compensation statutes do not define the term "subcontractor" as used in section 50-6-113(a), so we are left to discern its meaning in this context. In examining statutory text, we seek to effectuate "how a reasonable reader, fully competent in the language, would have understood the text at the time [the statute] was issued." *McNabb v. Harrison*, 710 S.W.3d 653, 658 (Tenn. 2025) (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 33 (2012)). We consider not only "contemporaneous dictionary definitions, but also usages and historical practices at the time of the adoption of the text." *Id*.

From its enactment in 1919, section 50-6-113(a) included the term "subcontractor." *See* Act of Apr. 15, 1919, ch. 123, § 15, 1919 Tenn. Pub. Acts 369, 375.

Contemporaneous dictionary definitions of the terms "subcontract" and "subcontractor" did not refer to furnishing goods; they instead emphasized the performance of work, as in labor or services. For example, the 1910 Black's Law Dictionary defines the compound word "subcontract" as "[a] contract subordinate to another contract, made or intended to be made between the contracting parties, on one part, or some of them, and a stranger," and it offers the example: "Where a person has contracted for the performance of certain work, (e.g., to build a house,) and he in turn engages a third party to perform the whole or a part of that which is included in the original contract, (*e.g*., to do the carpenter work)." *Contract*, *Black's Law Dictionary* 263 (2d ed. 1910) (explaining that "his agreement with such third person is called a 'subcontract,' and such person is called a subcontractor.'").[13] The definitions in that time frame did not appear to contemplate the

---

[13] *See also Subcontractor, Webster's Revised Unabridged Dictionary of the English Language* 1432 (1913) ("One who takes a portion of a contract, as for work, from the principal contractor."); *Subcontractor, Webster's New International Dictionary of the English Language* 2066 (1923) ("One who contracts with a contractor to perform part or all of the latter's contract."). *Subcontractor,* 10 *Oxford English Dictionary, Su–Sz*, at 13 (1933 ed.) (citing examples that include the performance of work but not the ordinary sale of merchandise, *e.g*., "The subcontractor . . . had to . . . lay down the temporary road.").

ordinary sale and ancillary delivery of merchandise. [14]

Furthermore, as Judge Usman observed in tracing the use of the term "subcontractor" from the late 1700s to modern day, the Oxford English Dictionary defines it as a "person who or company which undertakes work under a subcontract, or (more generally) undertakes work on a particular part of a large project." *Subcontractor*, *Oxford English Dictionary* (July 2023), https://doi.org/10.1093/OED/2011821603. *See Coblentz*, 2024 WL 1828677, at *13. Similarly, in tracing use of the *verb* "subcontract," the Oxford English Dictionary offers multiple definitions that highlight the performance of work. *See Subcontract*, *Oxford English Dictionary*, (Sept. 2025), https://doi.org/10.1093/OED/9947128798.

Interpreting "subcontractor" to refer to work such as labor or services and not to the sale and ancillary delivery of merchandise is consonant with a recognized purpose of section 50-6-113(a), namely, to "prevent[] employers from contracting out normal work simply to avoid liability for worker's compensation." *Stratton*, 695 S.W.2d at 951. *See In re Markus E.*, 671 S.W.3d at 460 ("The words in the statute 'must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" (quoting *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012)). It is consistent with our prior cases on statutory employers. [15]

As noted by the dissent in the Court of Appeals below, the great majority of our sister states, interpreting their workers' compensation laws, hold that contractual sale and

---

[14] We note that these definitions of "subcontract" and "subcontractor" indicate a subordinate contract for performance of some or all of a principal contractor's obligations. Our workers' compensation jurisprudence includes cases where an entity has been deemed a statutory employer even though it was apparently not a principal contractor. These cases appear to apply section 50-6-113(a) by reasoning that the purported statutory employer was acting as its own principal contractor. *See*, *e.g.*, *Campbell*, 883 S.W.2d at 605–06 (holding that electrical firm hired by broadcasting company to remove antenna and conduct other demo work at company was a "subcontractor" under section 50-6-113(a)); *Brown v. Canterbury Corp.*, 844 S.W.2d 134, 137 (Tenn. 1992) (same for construction company hired by developer to perform various tasks on project); *Acklie v. Carrier*, 785 S.W.2d 355, 357–58 (Tenn. 1990) (same for HVAC company hired by oil company to renovate office building); *Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 953 (Tenn. 1985) (same for construction firm hired by telephone company to string telephone wire); *Randolph v. Eastman Chem. Co.*, 180 S.W.3d 552, 559 (Tenn. Ct. App. 2005) (same for electromagnetic-testing firm hired by chemical company to conduct testing at its plant). In this case, no issue was raised as to whether section 50-6-113(a) should be applied where Tractor Supply was purportedly acting as its own principal contractor, so we do not address it. But we note that, in each of these prior cases, the party that was deemed the subcontractor under section 50-6-113(a) was performing work such as labor or services.

[15] See cases cited *supra* note 10.

ancillary delivery of merchandise does not "convert[] the selling/delivering business entity into a subcontractor" and does not "create a statutory employer status." *Coblentz*, 2024 WL 1828677, at *10 (Usman, J. dissenting) (quoting *Bendure v. Great Lakes Pipe Line Co.*, 433 P.2d 558, 563-64 (1967), and citing cases). *See, e.g.*, *Hammock v. United States*, 78 P.3d 93, 98 (Okla. 2003) (certified question) ("We do not believe the Legislature intended § 11 to apply when the relationship between the injured worker's immediate employer and the entity sought to be held liable in tort as a 'statutory employer' is that of vendor/vendee."); *id.* at 98 n.10 (collecting cases construing similar workers' compensation provisions and concluding the same); *Kelly v. TRC Fabrication, LLC*, 487 P.3d 723 at 729 (Idaho 2021) (collecting cases); *Meyer v. Piggly Wiggly No. 24, Inc.*, 527 S.E.2d 761, 763–64 (S.C. 2000); *Gray Bldg. Sys. v. Trine*, 391 S.E.2d 764, 765 (Ga. 1990) (per curiam); *Hart v. Richardson*, 272 So. 2d 316, 318–19 (La. 1973); *Brothers v. Dierks Lumber & Coal Co.*, 232 S.W.2d 646, 650 (Ark. 1950); *Heider v. Stoughton*, 35 N.W.2d 814, 815 (Neb. 1949). As also observed by the dissent in the Court of Appeals, this holding comports with the discussion of this topic in *Larson's on Workers Compensation*, recognized as an authoritative treatise on workers' compensation. *Coblentz*, 2024 WL 1828677, at *8 (quoting 10 *Larson's Workers' Compensation Law* § 111.04[d] as listing "the relation . . . of buyer to vendor" as one of the types of relationship that fall outside the parameters of a principal-subcontractor relationship).

Nevertheless, Tractor Supply maintains that a bare-bones vendor-vendee relationship can create statutory employer status, citing caselaw admonishing us to "liberally" construe the workers' compensation laws "promote and adhere to the Act's purposes of securing benefits to those workers who fall within its coverage." *Valencia v. Freeland & Lemm Const. Co.*, 108 S.W.3d 239, 242 (Tenn. 2003) (citation omitted). At oral argument, Tractor Supply identified no limiting principles to its position. It went so far as to assert that, under our workers' compensation laws, a seller's single delivery of purchased merchandise to a commercial business could create a statutory employer relationship.

Of course, Tractor Supply makes this extreme assertion from a safe perch, since Mr. Coblentz's employer paid his workers' compensation benefits. In this appeal, Tractor Supply seeks the protection of the exclusive remedy rule knowing it is not at risk of secondary liability for Mr. Coblentz's workers' compensation claims. King, *supra*, at 429 ("[T]he exclusive remedy rule protects statutory employers from tort claims by employees of their subcontractors for injuries covered by the Tennessee workers' compensation act, even if the immediate employer pays the entire workers' compensation claim. Thus, the status as statutory employer under section 50-6-113 will often give the statutory employer the best of both worlds.")(footnote omitted).

But even though exclusive remedy protection is the only thing at stake in this appeal, in construing the statutory text, we must be mindful that the *object* of section 50-6-113(a) is to make statutory employers secondarily liable for workers' compensation. *Collins*, 166 S.W.3d at 726 (noting that, to interpret a statute, courts consider its "language" and its "object"). Exclusive remedy protection is a byproduct of this very significant liability. *See Kelly*, 487 P.3d at 728 (describing the immunity under the exclusive remedy rule "as a 'quid pro quo' in exchange for the statutory employer's assumption of liability for worker's compensation benefits"). We must focus on who is made liable to pay benefits, not who wishes to have exclusive remedy protection.

Classifying ordinary purchasers of merchandise as statutory employers "would significantly disrupt and change commerce and business dealings." *Davis v. Ford Motor Co.*, 244 F. Supp. 2d 784, 788 (W.D. Ky. 2003) (applying Kentucky's workers' compensation law). Were we to adopt Tractor Supply's interpretation, a vendee who accepted delivery of a single product would find himself secondarily liable to pay workers' compensation benefits to the vendor's employee. In construing statutes, we seek to "avoid a construction that leads to absurd results." *State v. Curry*, 705 S.W.3d 176, 184 (Tenn. 2025) (citation omitted); *cf. Kelly*, 487 P.3d at 730 ("Were we to agree with TRC's construction of the statute, a driver, working as an independent contractor for a meal delivery service, such as Uber Eats, DoorDash, or any other delivery provider, such as Amazon, would be able to obtain workers compensation benefits from the person ordering that delivery because the person ordering the delivery would become the category one employer of the deliverer if the delivery person did not have worker's compensation insurance.").[16]

In sum, in construing the term "subcontractor" as used in section 50-6-113(a), we find that dictionary definitions around the time the statute was enacted refer to labor or services and not to the sale and ancillary delivery of merchandise. *See McNabb*, 710 S.W.3d at 658 (indicating we consider contemporaneous dictionary definitions when interpreting statutory text). Interpreting "subcontractor" to have this meaning furthers the recognized purpose of section 50-6-113(a), to prevent employers from contracting out their normal work to avoid workers' compensation liability. *Stratton*, 695 S.W.2d at 951 (describing this as a recognized purpose). It is consistent with our prior caselaw and aligns with the interpretation of workers' compensation statutes in the great majority of states. For these reasons, we agree with the Plaintiffs that the term "subcontractor" in section 50-6-113(a) refers to a person or entity that performs labor or services for another. A product

---

[16] *See also Davis*, 244 F. Supp. 2d at 788 (applying Kentucky law) ("The rule that the mere recipient of goods is not a statutory contractor makes a great deal of sense. To apply workers' compensation statutes to the ordinary sale of merchandise would significantly disrupt and change commerce and business dealings.").

vendor who merely engages in the sale and ancillary delivery of merchandise is not a "subcontractor" under section 50-6-113(a). *Cf. Wilson v. Daniel Int'l Corp.*, 197 S.E.2d 686, 687–88 (S.C. 1973) ("The impact of the statute is on employees engaged in work executed by subcontract. It is inapplicable to the relationship of buyer and seller of a commodity or material.").

### *Analytical Framework*

While delivery services ancillary to a contract for the sale of merchandise do not in and of themselves create a statutory employer relationship, vendor-vendee agreements may be accompanied by an undertaking to render further services in connection with the merchandise sold. That is the case in the contractual relationship between Tractor Supply and Mr. Coblenz's employer, Stanley National, where the arrangement involved a bit more than mere delivery of the purchased merchandise. This requires us to examine the level and type of services that could make a product vendor like Stanley National a "subcontractor" under section 50-6-113(a).

To determine whether a business arrangement that goes beyond a simple vendor-vendee relationship can create statutory employer status, the Plaintiffs argue that the Court should ascertain whether the relationship is predominantly for the sale of goods or for the sale of services.[17] To do so, the Plaintiffs cite cases from other jurisdictions that look to the predominant purpose of the contract between the parties, referred to as the "predominant purpose test."[18] The Plaintiffs note Tennessee courts have used the predominant purpose test to categorize certain sales disputes. *See, e.g.*, *Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789, 799 (Tenn. App. 2012); *Pass v. Shelby Aviation, Inc.*, No. W1999-00018-COA-R9-CV, 2000 WL 388775, at *4 (Tenn. App. Apr. 13, 2000) (collecting cases).

---

[17] Tractor Supply does not offer an alternate test or limiting principle for our consideration.

[18] *See Meyer v. Piggly Wiggly No. 24, Inc.*, 500 S.E.2d 190, 193 (S.C. Ct. App. 1998), *aff'd*, 527 S.E.2d 761 (S.C. 2000) ("Meyer's work stocking the shelves and maintaining the Derst display was incidental to the primary purpose of the arrangement between Derst and Piggly Wiggly, which was to provide baked goods for retail sale. Because Derst was a vendor rather than a subcontractor, [workers' compensation] does not apply and Meyer, therefore, is not Piggly Wiggly's statutory employee."); *see also Kelly*, 487 P.3d at 730 ("The services necessary for the completion of the contract were incidental in relation to the gravamen of the contract, which was the sale of goods."); *Brothers*, 232 S.W.2d at 650 ("[W]hen the contract to sell is accompanied by an undertaking by either party to render substantial services in connection with the goods sold, that party is a 'contractor' within the meaning of the section.").

The predominant purpose test has been used by courts across the country to determine whether to apply the common law or the Uniform Commercial Code (U.C.C.) to contracts for the sale of both goods and services. *See* 1 William D. Hawkland, *Uniform Commercial Code Series* § 2-102:3, Westlaw (database updated Nov. 2024). That determination is necessary because, "[i]f the predominant assets to be transferred are goods, the U.C.C. governs, but if the predominant assets are non-goods [or services], the U.C.C. has no application." *Hudson v. Town and Country True Value Hardware, Inc.*, 666 S.W.2d 51, 53 (Tenn. 1984) (adopting the "predominant factor test").

Our Court of Appeals has described the predominant purpose test:

In order to determine whether the predominant purpose of a mixed transaction is the sale of goods or the provision of a service, we examine the language of the parties' contract, the nature of the business of the supplier of the goods and services, the reason the parties entered into the contract (i.e. what each bargained to receive), and the respective amounts charged under the contract for goods and for services.

*Pass*, 2000 WL 388775, at *4 (collecting cases). *Pass* cited the Indiana Supreme Court's description of the analysis:

To determine whether the predominant thrust of a mixed contract is to provide services or goods, one looks first to the language of the contract, in light of the situation of the parties and the surrounding circumstances. Specifically one looks to the terms describing the performance of the parties, and the words used to describe the relationship between the parties.

Beyond the contractual terms themselves, one looks to the circumstances of the parties, and the primary reason they entered into the contract. One also considers the final product the purchaser bargained to receive, and whether it may be described as a good or a service.

Finally, one examines the costs involved for the goods and services, and whether the purchaser was charged only for a good, or a price based on both goods and services. If the cost of the goods is but a small portion of the overall contract price, such fact would increase the likelihood that the services portion predominates.

*Id*. (quoting *Insul-Mark Midwest, Inc. v. Modern Materials, Inc.*, 612 N.E.2d 550, 555 (Ind. 1993)); *Audio Visual Artistry*, 403 S.W.3d at 798–99 (same). No one factor is

determinative. *See Hudson*, 666 S.W.2d at 53 ("[A] view of the reasonable totality of the circumstances should control the characterization of the contract for sale." (quoting *De Filippo v. Ford Motor Co.*, 516 F.2d 1313, 1323 (3d Cir. 1975))).

The U.C.C. version of the predominant purpose test may not perfectly fit workers' compensation because, by statute, the question of whether an entity must pay workers' compensation benefits is *not* controlled by contractual terms. *See* Tenn. Code Ann. § 50-6-114(a) ("No contract or agreement, written or implied, . . . shall in any manner operate to relieve any employer, in whole or in part, of any obligation created" by the workers' compensation laws); *Stratton*, 695 S.W.2d at 953 (noting that the question of whether the workers' compensation laws apply to a given employer "is one of law for the courts" and a contractual provision intended "to insulate . . . from worker's compensation liability" is "of no effect" (citing Tenn. Code Ann. § 50-6-114)).

Nonetheless, a variation on the U.C.C. predominant purpose test is useful here. It is a widely recognized test and would enable our lawyers and courts to utilize an established body of law in Tennessee and elsewhere, which should facilitate consistent application to different facts. *See Keller v. Est. of McRedmond*, 495 S.W.3d 852, 877 (Tenn. 2016) (using similar reasoning).

To determine if 50-6-113 applies, we adopt the predominant purpose test for business relationships involving both goods and services, with the proviso that the written contract does not control the outcome. Courts must examine the parties' course of dealing to determine whether the services rendered are incidental to the sale of goods or "the contract to sell is accompanied by an undertaking to render substantial services." *Kelly*, 487 P.3d at 729; *cf. Dierks Lumber & Coal Co.*, 232 S.W.2d at 650 (requiring a party to "render substantial services in connection with the goods sold" to be considered a "contractor" under Arkansas' workers' compensation statutes); *Bendure*, 433 P.2d at 564–65 (holding workers' compensation does not apply to transactions for sale of goods unless "either party [] render[s] substantial services in connection with the goods sold"). The determination should rest on the totality of facts and circumstances surrounding the transaction at issue and the parties' overall business relationship. If the predominant purpose is the sale and delivery of merchandise and other services are incidental, the relationship is one of vendor-vendee and is outside the scope of the workers' compensation statutory-employer rule. If not, the next step is to employ *Lindsey* to determine whether a party should be deemed a statutory employer under section 50-6-113(a). *See Lindsey*, 275 S.W.3d at 421.

Now we apply this test to the vendor-vendee relationship between Tractor Supply and Stanley National to determine its predominant purpose.

While the parties' underlying contract is not controlling, we start with its language. *See Audio Visual Artistry*, 403 S.W.3d at 799 (citing *Pass*, 2000 WL 388775, at *4). The 2009 contract between Tractor Supply and Stanley National is titled "Vendor Agreement," and Stanley National is labeled as the "Vendor." Other contractual terms similarly indicate that the purpose of the agreement was for the sale of goods. For example, Section Four details the scope of the agreement: "All Purchase Orders issued . . . form part of the same transaction[.]" *See Audio Visual Artistry*, 403 S.W.3d at 799 ("Contractual language that refers to the transaction as a 'purchase,' for example, . . . indicates that the transaction is for goods rather than services."). Section Six describes vendor quotes: "Vendor shall identify the goods it is offering to TSC together with a quote for each in response to a Request for Quote ("RFQ") issued by a TSC Buyer." *See id.* ("Contractual language that . . . identifies the parties as the 'buyer' and 'seller,' indicates that the transaction is for goods rather than services.").

The written contract's descriptions of the parties' performance are replete with references to goods. For example, Section Eight says: "Vendor shall have the right . . . to change or supplement the goods offered for sale to TSC." Section Nine controls perishable "goods." [*Id.*]. Section Ten governs purchase orders and when Tractor Supply "may become bound to purchase goods from Vendor." [*Id.*]. The same section grants Tractor Supply the right to terminate a Purchase Order "at any time before shipment of the goods." It also covers title and the risk of loss: "The Vendor is responsible, at its cost, for insuring the goods to the FOB point for full replacement value . . . ." Subsequent sections discuss the registration of goods, the recall of goods, and the return of goods. Regarding Stanley National's displays inside Tractor Supply stores—the type of display that resulted in Mr. Coblentz's injury—Section Seventeen states that "only Vendor's goods shall be placed in such display or other equipment."

Section Two of the 2012 addendum to the Vendor Agreement addresses services other than delivery to be performed by Stanley National, related to the product displays:

> All Fixtures and POP provided by Vendor shall be owned by TSC, however, *it is Vendor's obligation to maintain* (*both restock and appearance and functionality*) the Fixtures.
> . . . .
> Upon removal, *Vendor shall place the existing fixtures* in a location designated by each store manager. TSC shall be responsible for the removal/disposal of the existing fixtures.

Thus, in support of Stanley National's sale of merchandise to Tractor Supply, the text of the contract obligated Stanley National to restock Tractor Supply periodically and maintain the appearance of Tractor Supply's display for the Stanley National merchandise.

Under the predominant purpose test, we also consider the nature of the seller's business. *Audio Visual Artistry*, 403 S.W.3d at 803; *Pass*, 2000 WL 388775, at *4. The only reference in the record to the nature of Stanley Nation's business is Mr. Coblentz's deposition, in which he described Stanley National as a supplier of tools and hardware for various businesses across the country. And Tractor Supply's brief frames its relationship with Stanley National as vendor-vendee. For example, Tractor Supply states that "Plaintiff was an employee of Stanley National . . . which is a vendor that sells products at TSC stores such as the one in Fayetteville."

The third factor is why the parties entered the contract, that is, whether the product the purchaser bargained to receive is a good or a service. *Id.* (citing *Pass*, 2000 WL 388775, at *12). Here, the record indicates Tractor Supply sought to procure Stanley National merchandise for resale to customers. Under the Vendor Agreement, Stanley National represented that its "goods [would] be manufactured, labeled, packed, shipped and stored in accordance with all applicable laws" and be of "sound and merchantable quality." Tractor Supply agreed to pay for those "goods" within sixty days of the invoice date. In the event of a price increase on a type of merchandise, the Vendor Agreement required Stanley National to provide Tractor Supply with information such as the stock keeping unit number, the part number, the barcode number, and the item description. This indicates Tractor Supply bargained to receive goods, namely, Stanley National merchandise for resale.

The record also indicates Stanley National installed the safety bars that secured the dedicated Stanley National barn door track display. Beyond that, the record does not refer to Tractor Supply's receipt of any service other than ancillary delivery of the Stanley National merchandise purchased and Mr. Coblentz's attendant responsibilities. Mr. Coblentz checked inventory levels, made sure Stanley National's merchandise was in the correct place in Tractor Supply's display, and overall tidied up the appearance of the Stanley National display.[19] None of these services were priced separately; they were

---

[19] In his deposition, Mr. Coblentz described his job responsibilities as follows:

Q: [T]ell me about what your responsibilities are on an ongoing basis related to your area or your aisle in a Tractor Supply store?

A: I would say service and inventory control. Inventory, as far as if it's sold out, we write an order to replace it. Service, as far as if product specifically, as an example,

included in the price of the merchandise Tractor Supply purchased.  *See, e.g.*, *Hammock v. United States*, 78 P.3d 93, 98–99 (Okla. 2023) (certified question) ("The relationship between Southern Sales and AAFES remained one of vendor/vendee, despite the services performed by Hammock in delivering, stocking, rotating, inventorying, and promoting Miller beer at the PX.").

Considering the totality of the circumstances, the record indicates that Tractor Supply entered into the "Vendor Agreement" to acquire Stanley National merchandise for resale, not to get any other services such as Mr. Coblentz's ancillary services doing restock orders and tidying Tractor Supply's display.  The services Mr. Coblentz performed were "incidental to the overarching purpose of [Stanley National's] business, which is to sell" merchandise.  *Audio Visual Artistry*, 403 S.W.3d at 803.  Both the written contract and the facts in the record show that Tractor Supply "bargained for the purchase of" Stanley National merchandise, and that the services rendered by Mr. Coblentz "were necessary but incidental to the ultimate purpose of the contract," the purchase of merchandise.  *Id*. at 804.  "What the purchaser sought to procure when he entered into the contract is a strong indication of the predominant purpose of the contract."  *Pass*, 2000 WL 388775, at *5 (citation omitted).  "If the purchaser's ultimate goal is to acquire a product, the contract should be considered a transaction in goods, even though service is incidentally required." *Id*. (quoting *Neibarger v. Universal Coops., Inc*., 486 N.W.2d 612, 622 (Mich. 1992)).

Here, the record supports the conclusion that the predominant purpose of the contract was for the vendor, Stanley National, to sell merchandise to the vendee, Tractor Supply.  Any services rendered were incidental to the sale of merchandise.  Accordingly, the relationship between Stanley National and Tractor Supply was one of vendor-vendee, not principal-subcontractor, and is outside the ambit of the workers' compensation statutes. For that reason, we need not apply the tests outlined in *Lindsey* for whether an entity such as Tractor Supply should be deemed a principal contractor under section 50-6-113(a). *Lindsey*, 275 S.W.3d at 421.  We hold that Tractor Supply is not Mr. Coblentz's statutory employer for purposes of Tennessee Code Annotated section 50-6-113(a) and Tractor Supply is not shielded from Mr. Coblentz's claims by the exclusive remedy provision of the workers' compensation statutes.

---

I guess I should say, if there were a carded product hanging on a hook and it doesn't belong on that hook, I would move said card product to the correct hook so--, and then if there's trash on the bins on the bottom of the [Stanley National] display, I would clean up the trash.  And if there's any product that doesn't belong in the display, I would remove it from our display and put it in a basket for a catch-all so the store personnel could restock it in an appropriate area.

The record also contains an unsigned document denoted as the "Tractor Supply Service Level Expectation," purportedly regarding Tractor Supply's expectations of vendor representatives.

**CONCLUSION**

For the reasons set forth in this Opinion, we reverse the Court of Appeals' judgment. This matter is remanded to the Court of Appeals to consider pretermitted issues and any other proceedings not inconsistent with this Opinion. Costs on appeal are taxed to appellee Tractor Supply Company, for which execution may issue if necessary.

s/Holly Kirby, Justice
HOLLY KIRBY, JUSTICE